IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| LINDA SUSAN MULLENIX, | § | |
| | § | |
| Plaintiff | § | |
| | § | Civil No. 1:19-cv-1203 |
| -v- | § | |
| | § | |
| UNIVERSITY OF TEXAS AT | § | |
| AUSTIN, | § | |
| | § | |
| Defendant. | § | |

---

## PLAINTIFF'S ORIGINAL COMPLAINT & JURY DEMAND

---

Plaintiff Linda Susan Mullenix files Plaintiff's Original Complaint & Jury Demand, and sues the University of Texas for violations of the Equal Pay Act, as well as for sex discrimination and retaliation.

Over the past three years, Professor Linda Mullenix, one of UT Law's most distinguished professors, has been paid $134,449 less than male professor Robert Bone. Professor Bone has the same above-average teacher evaluation rating as Professor Mullenix, but almost a decade less overall teaching experience, fewer than a third of Professor Mullenix's overall publications, and fewer professional honors. This pay gap is sex discrimination.

Moreover, UT Law has retaliated against Professor Mullenix for opposing the law school's unequal pay practices. For the last several years, Professor Mullenix has received among the lowest raises of any tenured faculty. For example, Professor Mullenix received a $1,500 raise for the 2018-2019 academic year, which was the

lowest raise given to any faculty member.  That same year Professor Bone, and many other professors less accomplished than Professor Mullenix, received $10,000 raises, some of the highest raises given.  Dean Farnsworth also retaliated against Professor Mullenix and attempted to chill reports of discrimination by telling Professor Mullenix that he would pay her the same as Professor Bone only if she agreed to resign in two years.  At that time and at present, Professor Mullenix has no plans to resign.

Another example of retaliation is that despite Professor Mullenix's repeated requests to be appointed Associate Dean for Research or to be put on the prestigious Budget Committee, she has been relegated to "do-nothing" committees that have little impact on the governance of the law school.  Most disturbingly, because of Professor Mullenix's opposition to UT Law's unequal pay practices, she has been made a pariah by the administration.  New professors are told to stay away from her and that she is "poison."  Professor Mullenix's marginalization is also held out as a warning to other professors who might speak out.

UT Law has reason to be worried about others speaking out about unequal pay and sex discrimination.  For at least the last three years, UT Law has, on average, paid tenured female professors over $20,000 less than tenured male professors.

By paying Professor Mullenix less than a similarly-situated male professor and retaliating against her for opposing unequal pay based on gender, UT Law has violated Title VII, the Equal Pay Act, and the Texas Labor Code.

I
PARTIES

1.   Plaintiff Linda Mullenix is an individual who resides in Travis County, Texas, and has during all relevant times been employed by the University of Texas at Austin.

2.   Defendant, University of Texas at Austin, is a state university located within the Western District of Texas.  Defendant may be served through its President, Gregory Fenves.

II
JURISDICTION AND VENUE

3.   This Court has original jurisdiction to hear this complaint under 28 U.S.C. § 1331, this action being brought under 42 U.S.C. § 2000e *et al.* and 29 U.S.C. § 206.

4.   This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367, these claims being so related to the claims in the action within this Court's original jurisdiction that they form part of the same case or controversy.

5.   Venue is appropriate because the acts giving rise to this lawsuit occurred within the Western District of Texas.

III
FACTS

**A. Professor Mullenix has been teaching for 45 years, has taught at the University of Texas School of Law for 28 years, and is a nationally recognized scholar in the field of civil procedure.**

6.    Professor Linda Mullenix currently holds the Rita and Morris Atlas Chair in Advocacy at the University of Texas School of Law, where she has been teaching courses since 1991.

7.    In total, Professor Mullenix has 45 years of teaching experience, making her— along with Professor Louise Weinberg—one of the most senior women on the UT Law faculty.

8.    At UT Law, Professor Mullenix teaches first-year federal civil procedure, mass tort litigation, and a seminar on transnational class actions.

9.    Professor Mullenix's academic responsibilities include creating course syllabi and updating course materials, teaching course content, holding office hours with students, counseling students on academic and career issues, creating and grading student performance assessment measures, performing institutional committee obligations, attending law school faculty events, research and publication of books, treatises, articles, and other commentary, engaging in continuing legal education, engaging in professional activities outside the law school (such as serving on various federal, state, and local committees), participating as a speaker or conferee at academic and professional meetings and conferences, and serving as a peer reviewer of colleagues' research and scholarship.

10.   Professor Mullenix earned her B.A. degree from the City College of New York, where she graduated magna cum laude, Phi Beta Kappa.

11.   Professor Mullenix earned M.Phil and Ph.D degrees in political theory from Columbia University, and her law degree from Georgetown University Law Center.

12.   After law school she practiced appellate litigation in Washington, D.C.

13.   Since beginning to teach in 1974, Professor Mullenix has been a visiting professor at Oxford University and the University of Trento in Italy.

14.   Professor Mullenix has been a visiting professor at Harvard, the University of Michigan, and Southern Methodist University law schools.

15.   She held the Reuschlein Distinguished Visiting Chair at Villanova and served as the Katherine Ryan Distinguished Professor at the Institute on World Legal Problems in Innsbruck, Austria.

16.   She has delivered lectures on class actions and complex litigation to audiences around the world, including in Austria, Brazil, Belgium, Canada, Colombia, Croatia, Germany, Israel, Italy, South Africa, Switzerland, and the U.K.

17.   Professor Mullenix has numerous professional honors.  Among others, she has served as a Supreme Court Fellow at the Federal Judicial Center; was a scholar-in-residence at the Rockefeller Foundation Bellagio Study and Conference Center in Italy; and held the Fulbright Senior Distinguished Chair in Law, in Trento, Italy.

18.    She is an elected Life Member of the American Law Institute, an elected Life Fellow of the Texas Bar Foundation, and an elected Life Fellow of the American Bar Foundation. She also is an elected member of the International Association of Procedural Law. She served on the Board of Directors of the Austin Fulbright Alumni Association.

19.    Professor Mullenix served as an Associate Reporter on the American Law Institute Restatement of the Law Governing Lawyers, a consultative member of the ALI Transnational Rules of Civil Procedure, and the ALI Complex Litigation Project.

20.    In 2012, the Travis County Women's Law Association awarded her the "Pathfinder 2012" Award.

21.    Professor Mullenix has the second highest publication record of any faculty member.  She has authored more than 80 law review articles, is the author or co-author of 22 books, and has written over 194 articles of short commentary, analysis, or reviews.

22.    Her scholarship is cited by state and federal courts across the country.  In fact, from 2000 through 2017, Professor Mullenix was the only female UT faculty member to be listed as a top-ten scholar in the field of civil procedure on Professor Brian Leiter's compilation of citation rankings by academic fields.

23.    Professor Mullenix is the only female faculty member of UT law school to be listed as a top 250 most-cited scholar, in all fields, by HeinOnline.

24.   Her students have recognized her for teaching excellence.  From 2017 to 2019, Professor Mullenix—with an average rating of 4.75—has had the second highest student evaluation ratings among the senior cohort of professors.

**B.   In 2010, Professor Mullenix discovered that she was being paid less than comparable male faculty at UT Law.**

25.   In December 2010, while researching the Texas Tribune's government salary tracker, Professor Mullenix discovered that she was being severely underpaid for her work compared to her male coworkers.

26.   She asked then-Dean Lawrence Sager to provide her with the actual salary array for all UT Law professors.

27.   In late May 2011, Dean Sager complied, albeit only in part, by providing a partial salary array.

28.   According to that array, Professor Mullenix was paid around $50,000 less than Professor Robert Bone, a recent hire with less teaching experience than Professor Mullenix.

29.   Professor Bone is a proper comparator because he teaches civil procedure just like Professor Mullenix and is also in the senior faculty cohort.

30.   When Professor Mullenix pointed out the gap between her and Professor Bone's salary, Dean Sager said, "I knew you would be upset when you saw that."

31.   Despite Dean Sager's apparent acknowledgement that Professor Mullenix was not being properly paid, Dean Sager refused to negotiate any adjustment to her salary.

32.    In fact, he tried to discourage Professor Mullenix from taking legal action.

33.    On at least one occasion, Dean Sager threatened her, stating that if she brought a lawsuit, "you will never be able to work anywhere again," and "nobody will like you."

34.    In September 2011, after retaining counsel, Professor Mullenix settled her Equal Pay Act claim against the School of Law.

35.    Among other things, the settlement paid Professor Mullenix $250,000, increased her salary by $20,000, and required the University to provide her with a salary array at the beginning of each academic year in order for her to monitor UT Law's continued compliance with its equal pay obligations.

36.    The $250,000 payment was structured, over objections by Professor Mullenix and her lawyer, as a forgivable loan.

37.    UT Law unilaterally decided to amortize the payment over ten years in $25,000 deferred compensation payments that are added to Professor Mullenix's salary.

38.    That unilateral decision allows UT Law to falsely inflate Professor Mullenix's salary by $25,000 every year until 2021.

39.    Indeed, UT Law even maintains several different salary arrays for the purpose of inflating salaries, which will be addressed below.

40.    This forgivable loan structure used by UT Law was also later found to be illegal by the Texas Attorney General's office.

41.   In December 2011, Dean Sager stepped down.  He was eventually replaced by Dean Ward Farnsworth in 2012.

42.   Due to the illegal way UT Law structured the $250,000 payment, Professor Mullenix was forced to pay tax penalties and accountant fees in 2014 or 2015.

43.   In December 2016, UT Law agreed to pay Professor Mullenix $16,000 to reimburse her for those fees and penalties.  However, UT Law refused to reimburse Professor Mullenix for the fees and penalties they caused unless she signed another general release of all claims to date.

44.   Under protest and in order to receive reimbursement, Professor Mullenix signed the agreement and release of claims on December 19, 2016.

45.   Because the settlement agreement did not increase her salary to parity with Professor Bone, the day after she signed that agreement, Professor Mullenix continued to be paid less than her male colleagues.

46.   This gap has grown larger every year since.

**C. Faculty salary and annual raises are determined by the Dean of UT Law based on recommendations from the Budget Committee.**

47.   Faculty salaries and raises at UT Law are not based on a seniority system.

48.   In theory, they are based on a merit system and are determined in the following manner:

49.   First, the Dean appoints seven or more faculty members to the Budget Committee.

50.     In theory, the Budget Committee then evaluates each individual faculty
        member's performance in three different areas: (1) scholarship, (2) teaching,
        and (3) service.

51.     The Budget Committee then recommends a particular raise for each faculty
        member to the Dean, who has the final say on what raise each faculty member
        will receive that year.

52.     The Dean also determines the raises for each member of the Budget
        Committee.

53.     In reality, the above standards are not consistently applied.

54.     From 2017 until 2019, the faculty members on the Budget Committee all
        received pay raises of $10,000 to $12,000, among the highest pay raises given,
        regardless of their performance record.

55.     Regarding scholarship, in theory the Budget Committee is supposed to review
        each faculty member's publication record over the prior five or six years.  The
        Budget Committee does this by reviewing a document it publishes each year
        containing a running list of faculty publications.  The reason for reviewing the
        past five or six years of publications is recognition of the fact that in any given
        year, a faculty member may have no reported publications for whatever reason,
        like working on a book.

56.     In reality, even a quick comparison of the salary array for 2018-2019 with the
        publication list put out by the Budget Committee itself shows that professors
        who publish very little or nothing over a period of several years still received

large raises.   For example, Professor Littwin, who was on the Budget Committee, published just one journal article in 2016 and nothing in 2017, yet she received a $12,000 raise.

57.   Professor McGarity, a male colleague of Professor Mullenix, published nothing in 2016.  In 2017, he wrote one journal article, co-authored another article with two colleagues, and wrote an op-ed for The American Prospect magazine.  He also received one of the highest raises in the amount of $10,000.

58.   Regarding the supposed standard of teaching, the standards are also not applied consistently.   The average teaching evaluation score for UT Law faculty in 2018-2019 was 4.5.   That should mean professors with student evaluation evaluations below 4.5 are below average teachers and should not receive high raises.

59.   However, the evidence shows that is not what happens.   For example, Professors David Rabban, Jay Westbrook, Richard Albert all have below average teaching evaluations, but received $10,000-$12,000 raises in 2019.

60.   UT Law also inconsistently applies the supposed standard of service.   In theory, the Budget Committee looks at a faculty member's service to the law school and legal profession, including participation in faculty workshops, speaking at conferences, and building the reputation of the Law School.

61.   Again, the evidence shows this purported standard is not applied consistently.   For example, at least three quarters of the faculty do not attend law school workshops or colloquia.   However, many of these faculty still receive high

raises, including Professors Mark Ascher, Charles Silver, Angela Littwin, Sean Williams, Lynn Baker, Mechele Dickerson, Michael Sturley, and Henry Hu.

62.   Further, as shown below with regards to Professor Mullenix's salary and raises, the system is applied in a discriminatory and retaliatory way.

63.   As shown below, under the purported metrics outlined above of scholarship, teaching, and service, Professor Mullenix should easily be paid as much as Professors Robert Bone, Tom McGarity, and Jay Westbrook.

**D. Since December 20, 2016, the gender pay gap between Professor Mullenix and her male comparators has grown by thousands of dollars every year.**

64.   There are numerous comparators for Professor Mullenix.

65.   The best comparator is Professor Robert Bone, because he and Professor Mullenix both teach the same first year civil procedure class.

66.   However, Professors Tom McGarity and Jay Westbrook, among many others, are also comparators.

67.   Since 2016, the gender pay gap has grown from over $19,000 to nearly $50,000. Here is Professor Mullenix's pay compared to Professors Bone, McGarity, and Westbrook:

| Faculty | Salary 2017-2018 | Disparity from Mullenix | Salary 2018-2019 | Disparity from Mullenix | Salary 2019-2020 | Disparity from Mullenix |
|---|---|---|---|---|---|---|
| Linda Mullenix | $329,418 | | $330,918 | | $337,418 | |
| Robert Bone | $367,401 | **$37,983** | $377,401 | **$46,483** | $387,401 | **$49,983** |
| Tom McGarity | $349,192 | **$19,774** | $359,192 | **$28,274** | $369,192 | **$31,774** |
| Jay Westbrook | $348,743 | **$19,325** | $358,743 | **$27,816** | $368,743 | **$31,325** |

**E. If UT Law applied its standards in a non-discriminatory manner, Professor Mullenix would be paid as much as Professor Bone. In fact, Professor Bone has been paid over $134,000 more than Professor Mullenix in the past three years.**

68. First, Professor Bone is currently the highest paid tenured faculty member at UT Law, with a salary of $387,401.

69. Professor Bone started teaching in 1983, which gives him almost a decade less teaching experience than Professor Mullenix. He has also been teaching at UT Law for 18 years less than Professor Mullenix.

70. Professor Bone teaches first year federal civil procedure, intellectual property, trademarks, and class actions. His job requires equal skill, effort, and responsibility under similar work conditions to Professor Mullenix.

71. Second, comparing Professor Mullenix and Professor Bone in the three performance areas that the Budget Committee and the Dean allegedly use to evaluate raises, the two professors are almost equal, with Professor Mullenix actually coming out slightly ahead based on her publication history.

72. Regarding scholarship, Professor Mullenix outperformed Professor Bone. During the 2017-2018 academic year, Professor Bone had five publications, while Professor Mullenix had 14.

73. Further, from 2013 until 2017, Professor Mullenix was listed as one of the top-ten most cited scholars on civil procedure according to Professor Brian Leiter's compilation of citation rankings. During that same period, Professor Bone was only an honorable mention. Both Professors Mullenix and Bone have been listed in the HeinOnline list of 250 most-cited academics, in all fields.

74.   Regarding teaching, during the 2017-2018 academic year, Professor Bone did not teach any classes in fall 2017 but taught 2 classes in spring 2018.  His average score was 4.7. Professor Mullenix taught two classes in fall 2017, but no classes in spring 2018.  Her average rating was 4.85.

75.   For the 2018-2019 academic year, Professor Bone was given a $10,000 pay raise.  For the same period, Professor Mullenix was given a $1,500 pay raise, the lowest raise of all faculty members who received pay raises.

76.   For the 2018-2019 academic year, Professor Bone's average student rating was 4.78.  Professor Mullenix had a rating of 4.77.

77.   For the 2019-2020 academic year, Professor Bone was given a $10,000 pay raise.  For the same period, Professor Mullenix was given a $6,500 pay raise, the 11th lowest raise of all faculty members who received pay raises.

78.   From Spring 2017 until Spring 2019, the average rating for both Professors Bone and Mullenix is 4.75.

79.   Regarding the third standard of service, Professor Bone and Professor Mullenix are comparable.  Professor Bone attends many internal law school workshops and meetings.   Professor Mullenix attends almost all alumni events.  Alumni relations does more for a school's reputation and standing outside the law school than internal faculty meetings.  Professor Mullenix also attends the Texas Law Review Banquet and participates in the Texas Law Fellows Auction.  Professor Mullenix writes clerkship recommendations for UT Law students, reviews papers from colleagues at other schools, and engages in

tenure and promotion reviews for outside candidates.  She also participates in faculty recruitment efforts which includes reviews of faculty candidates' scholarship for the Appointments Committee.

80. Under UT Law's own stated standards, Professor Mullenix and Professor Bone are equal form 2017 until 2019, yet Professor Bone received $134,449 more than Professor Mullenix.  The reason Professor Mullenix is paid less for equal work is because of her sex and prior reports of equal pay violations.

**F.  Professor Mullenix should not make less than Professor McGarity.**

81. Professor McGarity has been teaching for three less years than Professor Mullenix.

82. Professor McGarity teaches torts, environmental law, and administrative law.  His job requires equal skill, effort, and responsibility under similar work conditions to Professor Mullenix.

83. Regarding scholarship, during the 2017-2018 academic year, Professor McGarity only had three publications.  Professor Mullenix had 14.

84. Further, as stated above, from 2013 until 2017, Professor Mullenix was listed as one of the top-ten most cited scholars on civil procedure according to Professor Brian Leiter's compilation of citation rankings.  During that same period, Professor McGarity was listed as number 14 in administrative law.  Both have also been listed in the HeinOnline list of 250 most-cited academics, in all fields.

85.   Regarding teaching, during the 2017-18 and 2018-19 academic years, Professor McGarity and Professor Mullenix both taught approximately the same number of students and both received top five overall average student ratings. However, Professor McGarity was higher with an average of 4.87 to Professor Mullenix's 4.75.

86.   Regarding service, as outlined above, Professor Mullenix does a lot of work promoting the law school at alumni events and writing clerkship recommendation letters for students.  Professor McGarity engages in similar service to the law school, including recommendation letters for students, and other internal and external activities.

87.   Despite these similarities, for the past three years, Professor McGarity has received annual raises of $10,000, while Professor Mullenix has not.

88.   So, again, under UT Law's own standards, Professors Mullenix and McGarity are equal.  However, since 2017, Professor McGarity has received $129,822 more than Professor Mullenix, which includes the $50,000 Massey Teaching Award.

89.   Even if that award is not included, Professor McGarity has received $79,822 more than Professor Mullenix despite doing equal work.

90.   The reason Professor Mullenix is paid less is because of her sex and prior reports of equal pay violations.

## G. Professor Mullenix should not be paid less than Professor Jay Westbrook.

91.   Professor Westbrook has been teaching for six fewer years than Professor Mullenix.

92.   Professor Westbrook teaches basic commercial law, secured credit, bankruptcy, international business litigation, international business transactions and related seminars. His job requires equal skill, effort, and responsibility under similar work conditions to Professor Mullenix.

93.   Regarding scholarship, during the 2017-2018 academic year, Professor Westbrook only had two publications.  Professor Mullenix had 14.

94.   Again, as stated above, from 2013 until 2017, Professor Mullenix was listed as one of the top-ten most cited scholars on civil procedure according to Professor Brian Leiter's compilation of citation rankings.  During that same period, Professor Westbrook was also listed in the top-ten for bankruptcy and commercial paper.  Both have also been listed in the HeinOnline list of 250 most-cited academics, in all fields.

95.   During the 2017-2018 academic year, Professor Westbrook's average student rating was 4.8.  During that same period, Professor Mullenix's student rating was 4.85.

96.   For the 2018-2019 academic year, Professor Westbrook was given a $10,000 pay raise.  For the same period, Professor Mullenix was given a $1,500 pay raise, the lowest raise of all faculty members who received pay raises.

97.   For the 2018-2019 academic year, Professor Westbrook's average student rating was 4.45.  Professor Mullenix had a rating of 4.76.

98.   For the 2019-2020 academic year, Professor Westbrook was given a $10,000 pay raise.  For the same period, Professor Mullenix was given a $6,500 pay raise, the 11th lowest raise of all faculty members who received pay raises.

99.   Regarding the standard of service, both Professors Westbrook and Mullenix engaged in similar activities that benefited the law school.

100.  So, again, as with the other two professors detailed above, under UT Law's own alleged standards, Professors Westbrook and Mullenix are at least equal.  In fact, Professor Mullenix appears to be slightly better based on the performance. standards of scholarship and teaching.  But from 2017 until 2019, Professor Westbrook has received $78,466 more than Professor Mullenix.

101.  Again, the reason Professor Mullenix is paid less is because of her sex and prior reports of equal pay violations.

## H. Since December 2016, UT Law has been retaliating against Professor Mullenix for her prior reports of unequal pay.

102.  The above described acts of unequal pay also constitute retaliation against Professor Mullenix for her prior equal pay act complaints.

103.  In addition, Dean Farnsworth has made it known to Professor Robert Peroni that he does not care for Professor Mullenix because of her past equal pay act complaints.

104.   For example, in 2012, Dean Farnsworth told Professor Peroni, who was then on the Budget Committee that "if she thinks she's going to sue us again, bring 'em on."

105.   On October 12, 2018, Dean Farnsworth told Professor Mullenix that he could bring her salary into parity with Professor Bone, but only if she agreed to retire in two years.

106.   Dean Farnsworth's statement is direct evidence of retaliation because Professor Mullenix is a tenured faculty member who cannot be forced to resign or retire.  Moreover, Professor Mullenix was not planning to retire in two years, since the average retirement age for tenured faculty at UT Law is approximately 80 years old.

107.   Further, such a response to a complaint of discrimination is likely to chill complaints of discrimination from other faculty members.  If the Dean will address a tenured faculty member's complaint only if they retire early, faculty members are not likely to bring forward other complaints for fear of being pressured to resign.

108.   Professor Mullenix has also been retaliated against in other ways:

- She gets assigned to "do-nothing committees," which have no real impact on law school governance.

- Despite repeated requests to be appointed Associate Dean for Research or to be put on the prestigious Budget Committee, she has not been appointed to either.

- New faculty are told not to interact with her because she is "poison" due to her prior complaints.

- She has never been awarded university or law school teaching awards, which carry additional compensation.

- She is held out by the administration an example of what happens when a faculty member complains.

- She has been described as someone who causes problems for the university and has been described by the Dean because of her reports of equal pay violations as a difficult woman.

## I. UT Law's stated reason for not paying Professor Mullenix as much as Professor Bone and for giving her the lowest raise in 2018 is false.

109.  On September 20, 2018, Dean Farnsworth told Professor Mullenix that the reason she received the lowest salary raise was because he deferred to the recommendation of the Budget Committee, who recommended that particular raise.

110.  Dean Farnsworth repeated this allegation in the University of Texas' filings with the Equal Employment Opportunity Commission.

111.  However, all nine Budget Committee members told Professor Mullenix that they did *not* recommend she get the lowest raise. Specifically, Professors Lynn Baker, William Forbath, Bob Bone, Oren Bracha, Steve Goode, Angie Littwin, Tom McGarity, Susie Morse, and Bobby Chesney all told Professor Mullenix that they did not recommend that she receive the lowest raise.

**J. UT Law has retaliated against Professor Mullenix in order to discourage others from coming forward and conceal the fact that for the past three years, tenured female professors at UT Law have been paid on average $20-$24,000 less than tenured male professors.**

112. UT Law has retaliated against Professor Mullenix because the unequal pay problem may go beyond her.

113. In fact, according to one faculty member, in her 27 years at the law school things have never been so bad for women as they are right now at the school.

114. Based on the publicly available salary arrays for the past three years and including distinguished teacher awards for the seven professors who have received them, there is a large pay gap between tenured male and female professors:

| | **2017-18** | **2018-19** | **2019-20** |
|---|---|---|---|
| **All faculty avg:** | $275,623.23 | $282,417.05 | $290,223.03 |
| **Female faculty avg:** | $263,484.00 | $270,807.53 | $279,800.50 |
| **Male faculty avg:** | $287,762.46 | $294,026.56 | $300,645.57 |
| **Gender pay gap:** | **$24,278.46** | **$23,219.03** | **$20,845.07** |

115. Here are the numbers that were used to generate the averages stated above:

| Last Name | Sex | 2017-18 Comp. | Last Name | Sex | 2018-19 Comp. | Last Name | Sex | 2019-20 Comp. |
|---|---|---|---|---|---|---|---|---|
| Powers | M | $365,892 | Powers | M | $375,692 | Bone | M | $387,401 |
| Bone | M | $355,276 | Bone | M | $365,276 | Sager | M | $383,017 |
| Sager | M | $352,017 | McGarity | M | $359,192 | McGarity | M | $369,192 |
| McGarity | M | $349,192 | Westbrook | M | $358,743 | Westbrook | M | $368,743 |
| Westbrook | M | $348,743 | Rabban | M | $355,957 | Rabban | M | $365,957 |
| Rabban | M | $345,957 | Sager | M | $355,017 | Dickerson | F | $358,519 |
| Goode | M | $334,720 | Dickerson | F | $346,526 | Levinson | M | $349,305 |
| Dickerson | F | $334,526 | Levinson | M | $339,305 | Hu | M | $347,208 |
| Levinson | M | $334,305 | Goode | M | $337,720 | Baker | F | $346,512 |

| Name | | | Name | | | Name | | |
|---|---|---|---|---|---|---|---|---|
| Peroni | M | $330,959 | Baker | F | $334,824 | Goode | M | $344,220 |
| Mullenix | F | $329,418 | Peroni | M | $333,959 | Powe | M | $341,319 |
| Powe | M | $328,319 | Powe | M | $331,319 | Peroni | M | $340,459 |
| Baker | F | $322,824 | Mullenix | F | $330,918 | Sage | M | $340,000 |
| Ascher | M | $320,887 | Wagner | F | $326,297 | Wagner | F | $338,297 |
| Wickelgren | M | $318,500 | Ascher | M | $324,387 | Forbath | M | $338,104 |
| Robertson | M | $318,410 | Steiker | M | $323,724 | Mullenix | F | $337,418 |
| Wagner | F | $314,297 | Wickelgren | M | $322,500 | Steiker | M | $333,724 |
| Steiker | M | $313,724 | Silver | M | $321,265 | Silver | M | $331,265 |
| Silver | M | $311,265 | Robertson | M | $320,410 | Ascher | M | $330,887 |
| Smith | M | $307,671 | Smith | M | $311,171 | Wickelgren | M | $329,000 |
| Johanson | M | $299,044 | Forbath | M | $303,104 | Cohen | F | $319,972 |
| Weinberg | F | $298,099 | Johanson | M | $301,044 | Smith | M | $314,171 |
| Cohen | F | $294,972 | Weinberg | F | $300,099 | Jinks | M | $308,144 |
| Markovits | M | $294,801 | Markovits | M | $296,801 | Johanson | M | $304,044 |
| Forbath | M | $293,104 | Cohen | F | $294,972 | Weinberg | F | $303,099 |
| Hu | M | $288,454 | Hu | M | $292,454 | Markovits | M | $299,801 |
| Rau | M | $283,425 | Rau | M | $287,425 | Dzienkowski | M | $293,941 |
| Dzienkowski | M | $282,941 | Dzienkowski | M | $286,941 | Golden | M | $291,832 |
| Klein | F | $275,672 | Klein | F | $279,672 | Chesney | M | $287,700 |
| Sage | M | $269,977 | Golden | M | $276,832 | Klein | F | $286,672 |
| Engle | F | $268,000 | Engle | F | $275,500 | Engle | F | $282,500 |
| Sturley | M | $265,947 | Sage | M | $273,977 | Sturley | M | $277,447 |
| Graglia | M | $261,992 | Chesney | M | $273,826 | Wasserman | F | $277,000 |
| Golden | M | $261,832 | Sturley | M | $270,447 | Albert | M | $274,000 |
| Chesney | M | $261,826 | Bintliff | F | $263,000 | Laurin | F | $272,110 |
| Bintliff | F | $258,500 | Woolley | M | $262,807 | Bintliff | F | $270,500 |
| Woolley | M | $258,307 | Albert | M | $262,000 | Franklin | F | $270,000 |
| Albert | M | $250,000 | Graglia | M | $261,992 | Woolley | M | $267,807 |
| Jinks | M | $248,644 | Laurin | F | $260,110 | Bracha | M | $267,000 |
| Laurin | F | $248,110 | Franklin | F | $257,000 | Fishkin | M | $263,600 |
| Franklin | F | $244,000 | Bracha | M | $252,964 | Vladeck | M | $259,000 |
| Adelman | M | $242,000 | Jinks | M | $252,644 | Littwin | F | $257,833 |
| Spindler | M | $239,750 | Fishkin | M | $250,600 | Sepper | F | $257,000 |
| Dammann | M | $239,200 | Adelman | M | $247,000 | Morse | F | $255,000 |
| Bracha | M | $237,964 | Wasserman | F | $247,000 | Adelman | M | $254,500 |
| Fishkin | M | $237,600 | Vladeck | M | $247,000 | Dammann | M | $251,700 |
| Wasserman | F | $235,000 | Littwin | F | $245,833 | Spindler | M | $250,751 |
| Vladeck | M | $235,000 | Spindler | M | $245,750 | Deigh | M | $237,104 |

| Littwin | F | $233,833 | Dammann | M | $244,200 | Blais | F | $235,115 |
| Morse | F | $231,000 | Morse | F | $243,000 | Williams | M | $226,833 |
| Johnson | M | $228,872 | Blais | F | $233,115 | Encarnacion | M | $215,000 |
| Blais | F | $227,615 | Johnson | M | $228,872 | Ganor | F | $200,666 |
| Williams | M | $210,333 | Williams | M | $216,833 | Churgin | M | $195,886 |
| Churgin | M | $195,886 | Ganor | F | $197,666 | Perry | M | $183,824 |
| Ganor | F | $195,166 | Churgin | M | $195,886 | Hansen | F | $168,196 |
| Hansen | F | $168,196 | Hansen | F | $168,196 | Rau | M | n/a |
| Perry | M | $95,412 | Perry | M | $95,412 | Johnson | M | n/a |
| Deigh | M | $65,150 | Deigh | M | $67,150 | Graglia | M | n/a |
| Sepper | F | n/a | Sepper | F | n/a | Powers | M | n/a |
| Encarnacion | M | n/a | Encarnacion | M | n/a | Robertson | M | n/a |

116.   The pervasive and substantial pay disparity present between female and male faculty shows a systematic discriminatory environment at UT Law.

117.   The above chart also shows how UT Law has retaliated against Professor Mullenix by moving her farther and farther down the salary array, even though she had equal or better performance than those with higher salaries.

**K. UT Law is aware of this gender pay gap, but utilizes several different salary arrays and bookkeeping tricks to hide it and justify continued pay disparities.**

118.   To Plaintiff's knowledge, UT Law uses at least three different salary arrays.

119.   There is a salary array that sets forth each faculty member's base salary; a salary array that sets forth amortized salaries; and a salary array that includes other monetary special deals, teaching award compensation, or other additional money.

120.   UT Law uses these different arrays to  artificially inflate or deflate professors' salaries.  For example, as detailed above, one salary array misleadingly makes

Professor Mullenix's salary appear to be $25,000 higher because of her 2011 settlement.

121. These different salary arrays allow UT Law to obscure certain deals, bonuses and perks that some professors receive.

122. These different salary arrays allow UT Law to hide what is really going on and to continue knowingly discriminating against female tenured professors.

**I. All conditions precedent to suit have been met.**

123. On March 7, 2019, Professor Mullenix filed a charge of Discrimination with the EEOC alleging sex discrimination, Equal Pay Act violations, and retaliation.

124. On November 14, after 180 days passed, Professor Mullenix requested a Notice of Right to Sue, which was issued on November 20, 2019.

125. On November 26, 2019, Professor Mullenix requested a Right to Sue from the Texas Workforce Commission.

126. All conditions precedent to filing suit have been met.

## IV
### FIRST CAUSE OF ACTION: EQUAL PAY ACT VIOLATIONS

127. Plaintiff incorporates paragraphs 1-126 as if restated herein.

128. Defendant is subject to the Equal Pay Act.

129. Professor Mullenix performed work in a position requiring skill, effort, and responsibility similar to that of her male counterparts, and in similar working conditions.

130. As shown above, Professor Mullenix was paid less than her male counterparts that were working under substantially equal jobs requiring similar skills, effort, and responsibility as her position.

131. As shown above, Professor Mullenix was also retaliated against for asserting violations of the Equal Pay Act.

132. Because of the actions of Defendant, Professor Mullenix has suffered damages.

133. As shown above, Defendant has willfully violated the Equal Pay Act.

V

SECOND CAUSE OF ACTION: TITLE VII SEX DISCRIMINATION

134. Plaintiff incorporates paragraphs 1-133 as if restated herein.

135. Professor Mullenix is one of UT Law's most distinguished professors.

136. Professor Mullenix also is one of UT Law's most published and cited professors. She consistently receives higher than average student reviews.

137. Despite her hard work and dedication to UT Law, Professor Mullenix is compensated at a rate less than her male counterparts.

138. Professor Mullenix does not get equal pay for equal work.

139. Defendant is paying Professor Mullenix less because of her sex.

140. Defendant has violated Title VII.

VI

THIRD CAUSE OF ACTION: TITLE VII RETALIATION

141. Plaintiff incorporates paragraphs 1-140 as if restated herein.

142. Defendant has retaliated against Professor Mullenix by punishing her for speaking up against its discriminatory compensation practices.

143.   Defendant has marginalized Professor Mullenix's role at the law school by assigning her to "do-nothing" committees, and refusing to consider her for various university and law school teaching awards. She has been ostracized and has been reduced to a pariah within the UT law faculty.

144.   She has received low raises in retaliation for challenging the inequitable compensation system at the law school.

145.   Moreover, shortly after she filed her charge of discrimination with the EEOC, Defendant increased the salary disparity between Professor Mullenix and the male senior cohort in order to retaliate against her.

146.   These actions violate Title VII's anti-retaliation provision.

## VII
## FOURTH CAUSE OF ACTION: TEXAS LABOR CODE SEX DISCRIMINATION

147.   Plaintiff incorporates paragraphs 1-146 as if restated herein.

148.   As described above and in the incorporated paragraphs, Defendant discriminates against Professor Mullenix by paying her less than male counterparts because of her sex.

149.   Defendant has violated the Texas Labor Code.

## VIII
## FIFTH CAUSE OF ACTION: TEXAS LABOR CODE RETALIATION

150.   Plaintiff incorporates paragraphs 1-149 as if restated herein.

151.   As described above and in the incorporated paragraphs, Defendant has retaliated against Professor Mullenix by, among other things, assigning her to

"do-nothing committees," ostracizing her, and locking her out of teaching awards.

152. These actions violate the Texas Labor Code.

IX
JURY DEMAND

153. Plaintiff demands trial by jury on all issues and defenses in this case.

X
DAMAGES

154. Plaintiff seeks all damages allowed under the law, including monetary relief like back pay, benefits, lost wages, and:

    (a)    Plaintiff seeks an injunction prohibiting Defendants from engaging in unlawful practices.

    (b)    Plaintiff seeks additional equitable relief as may be appropriate, such as a raise to parity with male comparators, promotion, front pay, and court costs.

    (c)    Plaintiff seeks compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

    (d)    Plaintiff seeks reasonable attorney's fees and costs, including reasonable expert fees.

    (e)    Plaintiff seeks pre- and post-judgment interest at the maximum rate allowed by law.

WHEREFORE, premises considered, Plaintiff respectfully prays that Defendant be cited to appear and, that upon a trial on the merits, that all relief requested be awarded to Plaintiff, and for such other and further relief to which Plaintiff is justly entitled.

Respectfully submitted,
WILEY WALSH, P.C.

By: ___ */s/ Colin Walsh* ___
Colin Walsh
Texas Bar No. 24079538
*Board Certified Specialist, Texas Board of Legal Specialization, Labor and Employment Law*
Jairo Castellanos
Texas Bar No. 24089624

WILEY WALSH, P.C.
1011 San Jacinto Blvd., ste 401
Austin, TX 78701
Telephone: (512) 27-5527
Facsimile: (512) 201-1263
colin@wileywalsh.com
ATTORNEYS FOR PLAINTIFF