# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| LINDA SUSAN MULLENIX, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO.  1:19-CV-1203-LY |
| | § | |
| UNIVERSITY OF TEXAS AT AUSTIN | § | |
| | § | |
| Defendant. | § | |
| | § | |

---

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT[1]

---

Professor Linda Mullenix is currently paid $349,418 per year by The University of Texas at Austin. She is the fourteenth highest-paid member out of 52 tenured members of the Law School faculty.[2] Mullenix claims that her compensation is lower than that of certain male colleagues *because of her sex* in violation of the Equal Pay Act and Title VII. The evidence demonstrates the opposite: decisions about Mullenix's pay have been made through a careful process of merit-based peer review by the Law School's Budget Committee. Those decisions have been based on her scholarship, teaching, and service. There is no evidence that they have been influenced by her sex. UT Austin therefore respectfully requests this Court grant summary judgment on the remaining claims and dispose of this suit in its entirety.

---

[1] All evidence cited in this Motion is included in an attached Appendix. References to the Appendix are cited as "APP. xxxxxx," where "xxxxxxx" refers to the corresponding page in the Appendix.

[2] Ex. A, APP. 1-05 (2021 Salary Spreadsheet). The three highest-paid female faculty members received larger pay raises during the relevant period and are slated to earn more than Mullenix this year. *See id.* (showing Lynn Baker, Mechele Dickerson, Wendy Wagner as female faculty with salaries higher than Mullenix). Erik Encarnacion is not tenured, and he is not included in the count of 52 tenured faculty.

# TABLE OF CONTENTS

I.     INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II.    STATEMENT OF RELEVANT FACTS................................................................... 3

   A.   Mullenix settled pay claims in 2010 and executed a second release in 2016. ......................... 3

   B.   Dean Farnsworth relied on the Budget Committee to evaluate faculty. ............................... 3

   C.   The 2015 and 2017 Faculty Investment Initiatives affected pay raises of UT Law faculty. .... 5

III.   ARGUMENTS AND AUTHORITIES............................................................................. 7

   A.   Mullenix's EPA Claim is limited to pay differences between Mullenix and the average pay of proper male comparators that arose on or after December 20, 2016. .................................. 7

   B.   The Budget Committee uses a merit-based system, and its conclusions are based on factors other than sex................................................................................................................ 10

      1.   *2017 Budget Committee & 2017-2018 Pay Decisions*............................................. 11

      2.   *2018 Budget Committee & 2018-2019 Pay Decisions*............................................. 12

      3.   *2019 Budget Committee & 2019-2020 Pay Decisions*............................................. 13

      4.   *2020 Budget Committee, 2021 Budget Committee & 2021-2022 Pay Decisions* ......................... 13

      5.   *Mullenix's Admissions Undermine Her Claims* ................................................... 15

   C.   The Title VII claim fails because all pay decisions were made for legitimate, non-discriminatory reasons. ............................................................................................... 17

      1.   *Each pay decision made since the 2017 was based on legitimate, non-discriminatory factors.* ............ 18

      2.   *Mullenix cannot prove pretext.*............................................................................ 19

IV.    CONCLUSION.............................................................................................. 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                    **Page(s)**

*Ambrose v. Summit Polymers, Inc.*,
    172 F. App'x 103 (6th Cir. 2006) ...............................................................................11

*Anderson v. University of Northern Iowa*,
    779 F.2d 441 (8th Cir. 1985) ..................................................................................8, 9

*Badgerow v. Rej. Props.*,
    974 F.3d 610 (5th Cir. 2020) ....................................................................................17

*Blackburn v. Cypress Equities I, LP*,
    No. 12-CV-5030-D, 2014 WL 4771765 (N.D. Tex. Sept. 25, 2014) ...............................11

*Burton v. Freescale Semiconductor, Inc.*,
    798 F.3d 222 (5th Cir. 2015) ....................................................................................18

*Byrd v. Auburn Univ. at Montgomery*,
    No. 05-CV-835, 2007 WL 1140424 (M.D. Ala., Apr. 17, 2007) .................................18

*Corning Glass Works v. Brennan*,
    417 U.S. 188 (1974) ................................................................................................10

*County of Washington v. Gunther*,
    452 U.S. 161 (1981) ................................................................................................17

*EEOC v. Aetna*,
    616 F.2d 719 (4th Cir. 1980) ....................................................................................11

*Fairly v. Wal-Mart Stores*,
    216 F. Supp. 3d 708 (E.D. La. 2016) ........................................................................18

*Furfero v. St. John's Univ.*,
    No. 97-CV-7508, 1999 U.S. Dist. LEXIS 23464 (E.D.N.Y. June 4, 1999), *aff'd*,
    208 F.3d 2020 (2nd Cir. 2000) .................................................................................11

*Gould v. Fla. Atl. Univ. Bd. of Trs.*,
    No. 10-CV-81210, 2011 WL 13227873 (S.D. Fla. Nov. 15, 2011) ...............................19

*Harrison-Pepper v. Miami Univ.*,
    103 F. App'x 596 (6th Cir. 2004) ..............................................................................10

*Hein v. Or. Coll. of Educ.*,
    718 F.2d 910 (9th Cir. 1983) ......................................................................................8

*Hervey v. Miss. Dep't of Educ.*,
    404 F. App'x 865 (5th Cir. 2010) ..............................................................................18

*Int'l Bhd. of Teamsters v. United States,*
  431 U.S. 324 (1977) ........................................................................................................19

*Kaplan v. United States,*
  727 F. App'x 1011 (Fed. Cir. 2018) ..............................................................................11

*Lavin-Mceleney v. Marist College,*
  239 F.3d 476 (2d Cir. 2001) .............................................................................................8

*Laxton v. Gap Inc.,*
  333 F.3d 572 (5th Cir. 2003) .........................................................................................18

*Lee v. Burwell,*
  No. 16-CV-366, 2018 WL 4964547 (D.N.M. Oct. 15, 2018) .........................................19

*Lenihan v. Boeing Co.,*
  994 F. Supp. 776 (S.D. Tex. 1998) ..........................................................................17, 19

*Lindsley v. TRT Holdings, Inc.,*
  984 F.3d 460 (5th Cir. 2021) ................................................................................7, 9, 10

*Lynn v. Regents of Univ. of Cal.,*
  656 F.2d 1337 (9th Cir. 1981) .......................................................................................17

*McCullough v. Xerox Corp.,*
  224 F. Supp. 3d 193 (W.D.N.Y. Dec. 14, 2016) ............................................................19

*Monroe-Lord v. Hytche,*
  668 F. Supp. 979 (D. Md. 1987) ....................................................................................17

*Nasti v. CIBA Specialty Chems. Corp.,*
  492 F.3d 589 (5th Cir. 2007) ...................................................................................17, 18

*Peters v. Shreveport,*
  818 F.2d 1148 (5th Cir. 1987) .......................................................................................17

*Schwartz v. Florida Bd. of Regents,*
  807 F.2d 901 (11th Cir. 1987) .........................................................................................9

*Schwartz v. Florida Bd. of Regents,*
  954 F.2d 620 (11th Cir. 1991) .......................................................................................11

*Scott v. Dallas County Hosp. Dist.,*
  85 F. App'x 361 (5th Cir. 2003) ....................................................................................11

*Siler-Khodr v. Univ. of Tex. Health Sci. Ctr. San Antonio,*
  261 F.3d 542 (5th Cir. 2001) ..............................................................................7–8, 10

*Sims v. Wells Fargo Bank, N.A.*,
    298 F. Supp. 3d 987 (S.D. Tex. 2018) ........................................................................... 17, 18

*Suter v. Univ. of Tex. at San Antonio*,
    859 F. Supp. 2d 851 (W.D. Tex. 2012), *aff'd*, 495 F. App'x 506 (5th Cir. 2012) ...................... 10, 11

*Taylor v. United Parcel Serv., Inc.*,
    554 F.3d 510 (5th Cir. 2008) ..................................................................................... 17

*Thibodeaux-Woody v. Houston Cmty. College*,
    593 F. App'x 280 (5th Cir. 2014) ................................................................................ 19

*Wiley v. Am. Elec. Power Serv. Corp.*,
    287 F. App'x 335 (5th Cir. 2008) ................................................................................ 11

*Willner v. Univ. of Kansas*,
    848 F.2d 1023 (10th Cir. 1988) ................................................................................. 10

*Wojciechowski v. Nat'l Oilwell Varco, L.P.*,
    763 F. Supp. 2d 832 (S.D. Tex. 2011) ......................................................................... 11

*Wu v. Thomas*,
    847 F.2d 1480 (11th Cir. 1988) ................................................................................. 11

**Statutes**

9 U.S.C. § 206(d) ("Equal Pay Act") ...............................................................................*passim*

42 U.S.C. § 2000e–2 ("Title VII") ...................................................................................*passim*

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

The University of Texas School of Law sets faculty salaries through a process of review by a faculty Budget Committee. That Committee consists of male and female colleagues at different stages of their careers, and its membership changes from year to year. The Committee evaluates the work of each tenured faculty member every spring, then works with the Dean to turn those evaluations into decisions about pay. Mullenix brought this suit because in recent years the Committee has given more favorable evaluations to several of her colleagues than it has given to her. As a result, many of those colleagues—male and female—have received larger raises than Mullenix, and she disagrees with these Committee assessments. She believes the Committee's evaluations are incorrect, too subjective, and defective in other ways, and that her work is better than the Committee thinks it is. She is entitled to those views. On the record in this case, however, the critical legal point is clear: the decisions about Mullenix's pay have not been based on her sex.

Turning specifically to the plaintiff's First Amended Complaint, her surviving claims are (1) pay discrimination under the Equal Pay Act ("EPA"), and (2) sex discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") based on her pay.[3]   Neither claim is supported by the evidentiary record. After vast amounts of discovery, including 70 hours of depositions, Mullenix has unearthed no evidence that decisions about her pay resulted from discrimination on account of her sex. Rather, the school's Budget Committee, through its various membership combinations, has rated

---

[3] *See* ECF 25 ¶¶ 144–157.  On December 12, 2019, Mullenix filed this lawsuit against UT Austin. ECF 1. Mullenix filed her First Amended Complaint on December 4, 2020. ECF 25. The Court has since dismissed Mullenix's EPA and Title VII retaliation claims with prejudice. ECF 18, 61, 90. On September 24, 2021, Mullenix filed a Motion for Leave to File a Second Amended Complaint attempting to reassert the previously dismissed retaliation claims. ECF 127, 127-1 ¶ 487 and ¶¶ 497-502. UT Austin opposes Mullenix's Motion for Leave to file the proposed 116-page Second Amended Complaint and intends to respond in due course. UT Austin will show that Mullenix's reassertion of her retaliation claims is futile. If the Court determines that the retaliation claims in the proposed Second Amended Complaint may be reasserted, UT Austin reserves the right to seek summary judgment on such claims.

her performance lower than that of both male and female colleagues, resulting in those male and female colleagues receiving larger raises than Mullenix has received. One of the Committee's most consequential actions was voting for faculty to receive enhanced raises under the University's Faculty Investment Initiative ("FII"). Those decisions were made by Committee vote; the votes were taken by secret ballot, and members could not vote for themselves. As a result of this process, many women received enough votes to be awarded enhanced FII raises, but Mullenix did not. There is no evidence that Mullenix's sex was a factor in any of the Committee's evaluations or votes, or in ultimate pay decisions.

As to Mullenix's claim under the EPA, the University has an indisputable affirmative defense. Mullenix receives a different salary than other faculty members based on factors other than sex: namely, the Committee's merit-based evaluation of faculty performance and its votes on the Faculty Investment Initiative. Her Title VII claim fails for the same reason, as pay decisions were made for legitimate, non-discriminatory reasons having nothing to do with her sex.

Mullenix admits that the Committee does not value her work as highly as she believes it should. She feels strongly that her scholarship really *is* just as good as that of her claimed comparators. But if these views were enough to entitle a plaintiff to a trial, there would be no end to litigation over the salaries of university faculty members. If faculty members have a higher opinion of their own work than their colleagues do, it is not the job of a federal court to resolve those differences of opinion. Instead, the question for this Court is simply whether there is competent evidence that Mullenix's pay reflects discrimination against her on account of her sex, or whether it is based on factors other than sex. On those points, there is no genuine issue of material fact, and summary judgment is in order.

## II.     STATEMENT OF RELEVANT FACTS

**A.      Mullenix settled pay claims in 2010 and executed a second release in 2016.**

In 2010, Mullenix alleged that UT Law's pay practices violated the EPA.[4] To resolve this claim, UT Austin and Mullenix entered into a Confidential Settlement Agreement and Full Release and Waiver of All Claims ("2010 Agreement").[5]

In 2016, Mullenix demanded that UT Austin reimburse her for tax-related expenses ostensibly connected with the 2010 Agreement and the related forgivable loan that she received.[6] On December 19, 2016, she signed a second Confidential Settlement Agreement and Full Release and Waiver of All Claims ("2016 Agreement") to resolve her demand.[7] UT Austin thus focuses on the facts relating to Mullenix's compensation since December 20, 2016.

**B.      Dean Farnsworth relied on the Budget Committee to evaluate faculty.**

While the Dean is ultimately responsible for setting faculty compensation, Dean Farnsworth relied heavily on the Budget Committee in setting faculty raises throughout the relevant time period.[8] The Committee consists of seven to nine members of the faculty annually appointed by the Dean.[9]

---

[4] *See* ECF 25 ¶ 24.
[5] Ex. B, APP. 6-14 (2010 Agreement).
[6] Ex. C, APP. 15-16 (J. Graves email to L. Mullenix). In connection with the 2010 Agreement, Mullenix entered into a Promissory Note ("Note") with The University of Texas Law School Foundation, pursuant to which the Foundation agreed to provide Mullenix a forgivable loan in the amount of $250,000. Ex. D, APP. 17-26 (Note).
[7] Ex. E, APP. 27-33 (2016 Agreement).
[8] *See* Ex. F, Farnsworth Dep. (03.29.21) 43:2–44:4, 196:16–197:1; Ex. G, Forbath Dep. 38:15–19, 124:10–19.
[9] *See* Ex. F, Farnsworth Dep. (03.29.21) 225:23–6; Ex. H, McGarity Dep. 24:16–25:1; *see also, e.g.*, Ex. I, Mullenix Dep. Ex. 2, APP. 110-140 (Committee Assignments); Ex. J at APP. 147 (2020–2021 Committee Assignments). Dean Farnsworth generally appoints to the Budget Committee the faculty members "who are among the strongest members of the faculty and whose judgment [he] think[s] their colleagues respect and are comfortable with in setting pay." *See* Ex. F, Farnsworth Dep. (03.29.21) 225:9–22, 45:22–46:8; Ex. UU, Farnsworth Dep. (03.31.21) 254:1–18. Some faculty members regularly serve on the Budget Committee, while others rotate on and off. Ex. H, McGarity Dep. 24:19–26:1; Ex. I, Mullenix Dep. Ex. 2, APP. 110-140 (Committee Assignments).

Since 2017, the Committee has had two to four female members annually, including a female chair in 2018.[10]

The Committee's work is guided by the Standards for Law School Performance Evaluation of Tenured and Tenure-Track Faculty (the "Standards"), which the faculty approved in 2012.[11] The Standards explain that the Budget Committee evaluates faculty members' performance on three key metrics: scholarship, teaching, and service.[12]

The Standards explain the meaning of those terms and how faculty will be evaluated with respect to each of them. As for scholarship, the Standards specify what types of publications are considered scholarship (*e.g.*, books, book chapters, articles in law reviews), and which are not (*e.g.*, CLE materials, brief essays).[13] As for teaching, the Standards make it clear that "a faculty member's classroom performance will be evaluated on the basis of student evaluations."[14] Similarly, the Standards explain the type of activities that constitute service to the Law School, the University, and to the greater legal and educational community.[15]

Each spring, the Budget Committee meets for many hours over a period of a few months to assess the performance of each faculty member.[16] Every piece of scholarship produced by a faculty member in the prior calendar year is read by at least one Committee member, who reports on it to the

---

[10] Ex. I, Mullenix Dep. Ex. 2, APP. 110-140 (Committee Assignments).

[11] Ex. K, APP. 152-155 (Standards); *see also, e.g.,* Ex. L, APP. 156-163 (2015 Budget Committee Memo); Ex. M, APP. 164-168 (2017 Budget Committee Memo); Ex. N, APP. 169-171 (2018 Budget Committee Request); Ex. O, APP. 172-174 (2018 Budget Committee Review Process).

[12] *See* Ex. K, APP. 152-155 (Standards).

[13] *See id.*; *see also, e.g.,* Ex. P, Chesney Dep. 69:3–71:16, 115:2–121:5; Ex. Q, Baker Dep. 196:16–197:17.

[14] *See* Ex. K, APP. 152-155 (Standards); *see also, e.g.,* Ex. P, Chesney Dep. 98:17–102:5, 104:13-105:2; Ex. Q, Baker Dep. 48:14–49:13; Ex. R, Westbrook Dep. 145:3–150:23.

[15] *See* Ex. K, APP. 152-155 (Standards). The Standards also provide faculty with further detail and information regarding each factor and the evaluation process. *See id.*

[16] *See* Ex. UU, Farnsworth Dep. (03.31.21) 261:22–262:6; *see also* Ex. H, McGarity Dep. 22:3–30:3; Ex. S, Bone Dep. 37:4–38:3; Ex. Q, Baker Dep. 157:19–160:8.

group.[17] The Committee rates each faculty member's overall performance as (i) below baseline; (ii) baseline minus; (iii) baseline; (iv) baseline plus; or (v) above baseline.[18] Dean Farnsworth then proposes raise amounts based these ratings, as well as seniority and placement on the salary scale.[19] Dean Farnsworth discusses these proposals with the Budget Committee to reach final decisions.[20] During this last step, the Committee and the Dean also evaluate each faculty member's overall salary relative to their peers.[21]

During each year relevant to this litigation, any scholarship Mullenix had written was discussed by the Committee.[22] Each year, her overall performance was evaluated as "baseline" or "below baseline" (i.e., "below ave"); those evaluations will be discussed further below.[23] It is clear that the Budget Committee evaluated Mullenix and the other faculty member based on their scholarship, teaching, and service. The record contains no evidence that the Committee's deliberations of Mullenix or her claimed comparators were influenced by or based on sex or any other improper considerations.

**C.      The 2015 and 2017 Faculty Investment Initiatives affected pay raises of UT Law faculty.**

In addition to its ordinary annual review of faculty, the Budget Committee voted to decide the

---

[17] *See e.g.*, Ex. M, APP. 164-168 (2017 Summary); Ex. N, APP. 169-171 (2018 Request); *see also* Ex. R, Westbrook Dep. 138:20–141:11; Ex. H, McGarity Dep. 26:20–27:8, 131:3–132:5.

[18] *See* Ex. F, Farnsworth Dep. (03.29.21) 51:18–25; Ex. Q, Baker Dep. 47:22–51:5; Ex. T, Goode Dep. 80:17–81:18; *see also, e.g.*, Ex. FF at APP. 517-518, 524-534 (McGarity 2019 memo); Ex. HH at APP. 609, 613-614, 616-625 (McGarity 2020 Memo); Ex. JJ, APP. 630-639 (Jinks 2021 Memo).

[19] *See* Ex. F, Farnsworth Dep. (03.29.21) 79:2–22; Ex. T, Goode Dep. 90:16–23; Ex. H, McGarity Dep. 29:3–30:3.

[20] *See* Ex. F, Farnsworth Dep. (03.29.21) 50:15–52:18.

[21] *See id.* at 315:2–317:9; Ex. Q, Baker Dep. 149:3–9, 149:25–150:6; Ex. S, Bone Dep. 97:4–98:17; Ex. P, Chesney Dep. 60:7–61:4, 65:1–23, 67:21–23, 141:18–143:9; Ex. U, APP. 289-291(2018 Report). Dean Farnsworth's practice has been to send a letter to each faculty member describing their evaluation and raise for the upcoming year. *See* Ex. F, Farnsworth Dep. (03.29.21) 240:20–24; *see also, e.g.*, Ex. V, APP. 292-354 (2017 Compensation Letters); Ex. W, APP. 355-356 (2018 Letter to Mullenix).

[22] Ex. DD at APP. 432-433 (McGarity 2017 Memo); Ex. X, APP. 357-359 (Baker 2018 Memo); Ex. FF at APP. 527 (McGarity 2019 Memo); Ex. HH at APP. 617-619 (McGarity 2020 Memo); Ex. JJ at APP. 637 (Jinks 2021 Memo).

[23] *See* Ex. SS, APP. 746-747 (Summary Chart).

recipients of additional pay raises under two university Faculty Investment Initiatives ("FII"), which went forward in two parts: FII-1 and FII-2. (FII-1 occurred in 2015, before the years at issue in this lawsuit, but will be explained here for the sake of clarity.)

In Spring 2015, then-Provost Gregory Fenves first announced the Faculty Investment Initiative.[24] FII-1 focused on enhancing raises for high-performing faculty.[25] The Provost allocated funds to all schools to award enhanced raises to approximately 10% of their respective faculty members.[26]

Dean Farnsworth consulted with the 2015 Budget Committee, which voted on the Law School faculty members who should receive these awards.[27] After discussion between the Dean and the Committee, the recipients were six female faculty members and one male.[28] Neither Mullenix nor any of her claimed male comparators received raises under FII-1.[29]

In 2018, UT Austin launched a second round of the FII ("FII-2").[30] Schools were instructed to identify roughly a third of their faculty members for enhanced raises funded by the Provost's

---

[24] *See* Ex. UU, Farnsworth Dep. (03.31.21), Ex. 6 at APP. 811-812.

[25] *See id.* at Ex. 7 at APP. 813-814.

[26] Ten percent of the UT Law faculty equated to about six to seven faculty members. *See id.* The $50,000 award was to be distributed evenly based on $10,000 raises over a five-year period. *See* Ex. UU, Farnsworth Dep. (03.31.21), Ex. 6 at APP. 811-812, and Ex. 7 at APP. 813-814.

[27] *See id.* Ex. 7 at APP. 813-814; Ex. H, McGarity Dep. 202:12–203:15.

[28] Cary Franklin (female); Joseph Fishkin (male); Jennifer Laurin (female); Angela Littwin (female); Mechele Dickerson (female); Wendy Wagner (female); and Lynn Baker (female). *See* Ex. UU, Farnsworth Dep. (03.31.21), Ex. 7 at APP. 813-814.

[29] *See* Ex. Z at APP. 365 (Pl.'s Resps. to Def.'s First Interrogs.) (identifying Robert Bone, Thomas McGarity, Jay Westbrook, David Rabban, William Sage, Henry Hu, Sandy Levinson, Robert Peroni, Willy Forbath, Lucas Powe, Steve Goode as employees Mullenix contends are "similarly situated to [her] for the purposes of" her EPA and Title VII claims).

[30] Ex. AA, APP. 378-383 (Provost's Memo to Deans). FII-2 differed from FII-1 in that it allowed UT Law to provide FII awards to a larger segment of the faculty (approximately one third) over a shorter period (three years). *Id.* Dean Farnsworth relied on a vote of the 2018 Budget Committee to determine the FII-2 recipients. *See* Ex. Q, Baker Dep. 199:5–200:3, 200:4–201:5, Ex. 11; Ex. S, Bone Dep. 184:9–21. Although several members of the 2017-2018 Budget Committee received FII-2 awards, Budget Committee members could not vote for themselves. Ex. UU, Farnsworth Dep. (03.31.21) 131:21–133:8; Ex. S, Bone Dep. 203:16–17.

Office.[31] The Dean consulted the Budget Committee to identify faculty for this purpose, and the Committee discussed possible candidates at length.[32] Members of the Committee then cast votes by secret ballot; individual members of the Committee were not permitted to vote for themselves.[33] On the basis of that vote, twenty-one faculty were selected to receive enhanced raises as part of FII-2: eight female faculty members and thirteen men (including five identified by the plaintiff as comparators).[34] Like many other faculty members, Mullenix was not selected for an enhanced raise under FII-2.[35] Much of the differences in pay between Mullenix and her identified comparators resulted from this vote by the Budget Committee.

### III.    ARGUMENTS AND AUTHORITIES

**A.    Mullenix's EPA Claim is limited to pay differences between Mullenix and the average pay of proper male comparators that arose on or after December 20, 2016.**

To establish a *prima facie* claim under the EPA, Mullenix must show that "she performed work in a position requiring equal skill, effort and responsibility under similar working conditions, and that she was paid less than members of the opposite sex."[36] If she makes that showing, the burden shifts to UT Austin to "prove by a preponderance of the evidence that the wage differential is justified under one of the four affirmative defenses set forth in the [EPA]: (1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) any other factor than sex."[37] Mullenix cannot establish a *prima facie* case based on cherry-picked male faculty, nor rebut UT

---

[31] Ex. AA, APP. 378-383 (Provost's Memo to Deans).
[32] Ex. Q, Baker Dep. 198:11–203:6; Ex. S, Bone Dep. 184:9–189:10; Ex. G, Forbath Dep. 26:24–31:7.
[33] Ex. G, Forbath Dep. 33:12–22, 27:8–23; Ex. S, Bone Dep. 184:9–185:4; Ex. UU, Farnsworth Dep. (03.31.21) 131:21–132:14.
[34] *See* Ex. BB, APP. 384-385 (Faculty receiving FII-2); *see also* Ex. UU, Farnsworth Dep. (03.31.21) 146:22–147:4, Ex. 10 (Compensation Letters). The five male comparators who received FII-2 awards were Bone, Forbath, McGarity, Rabban, and Westbrook. *See* Ex. SS, APP. 746-747 (Summary Chart).
[35] *See* Ex. BB, APP. 384-385 (Faculty receiving FII-2).
[36] *Lindsley v. TRT Holdings, Inc.,* 984 F.3d 460, 466 (5th Cir. 2021) (internal quotations omitted).
[37] *Siler-Khodr v. Univ. of Tex. Health Sci. Ctr. San Antonio*, 261 F.3d 542, 546 (5th Cir. 2001); *see also* 29 U.S.C. § 206(d)(1).

Austin's affirmative defenses under the EPA.

Mullenix attempts to make a prima facie case by comparing herself to three of the highest-paid male faculty members. The EPA, however, does not permit her to arbitrarily compare herself to a few select men and ignore the rest. Courts have found that a plaintiff asserting a claim must show she was paid less than the *average* men in similar positions[38] Accordingly, any compensation differences must be based on the average salary of a proper set of comparators, not just the most highly-paid professors. Mullenix initially alleged that her proper comparators are Professors Bone, McGarity, and Westbrook, who are among the longest-tenured and highest-paid faculty.[39] Yet, in her responses to interrogatories, she identifies a broader set of comparators, comprised of eleven male professors.[40] Thus, where Mullenix must prove that "she was paid less than members of the opposite sex," any comparison must relate, at a minimum, to these eleven senior faculty members.

Any pay disparity alleged by Mullenix must also take into account the 2016 Agreement, which resolved Mullenix's claims of pay differences through December 19, 2016.[41] A party who settles an EPA claim is barred from raising the same claim based on the same previously-waived pay differential. In *Anderson v. University of Northern Iowa*, the Eighth Circuit Court of Appeals upheld the dismissal of

---

[38] *See, e.g., Hein v. Or. Coll. of Educ.*, 718 F.2d 910, 916 (9th Cir. 1983) ("[T]he proper test for establishing a prima facie case in a professional setting such as that of a college is whether the plaintiff is receiving lower wages than the average of wages paid to all employees of the opposite sex performing substantially equal work and similarly situated with respect to any other factors, such as seniority, that affect the wage scale."); *Lavin-Mceleney v. Marist College*, 239 F.3d 476, 481–82 (2d Cir. 2001) ("The problem with comparing plaintiff's pay only to that of a single male employee is that it may create the impression of an Equal Pay Act violation where no widespread gender discrimination exists.").

[39] ECF 25, at ¶¶ 62–100 (comparing Plaintiff to Professors Bone, McGarity, and Westbrook).

[40] *See* Ex. Z, APP. 363-377 (Pl.'s Resps. to Def.'s First Interrogs.). UT Austin uses these eleven comparators for purposes of this motion, but UT Austin does not concede that these eleven are similarly situated to Mullenix for purposes of the EPA or Title VII.

[41] Note that Plaintiff also settled claims against UT Law, including under Title VII and the EPA, in a December 23, 2010 settlement agreement. Ex. B, APP. 6-14 (2010 Agreement). That Agreement also included a $20,000 increase to Plaintiff's base salary, and the arguments presented here are equally applicable to both settlement agreements. *Id.*

an EPA claim in the university context, finding that:

> [The] plaintiff participated in the 1977 settlement of an Equal Pay Act suit against the university. As part of the settlement, plaintiff waived claims covered by the suit, which had asked for damages for past violations and injunctive relief from further Equal Pay Act violations. <u>The salary gap between Professor Anderson and Dr. Greene has existed since he was hired in 1972, and any claim she might have based on that differential was resolved in 1977.</u>[42]

In *Schwartz v. Florida Board of Regents*, a similar EPA case brought by a professor who had previously settled pay disparity claims with the university, the Eleventh Circuit held, "Schwartz did, however, agree to the 1979-80 base salary established in the settlement agreement. In any subsequent claim for equal pay Schwartz must be bound by his agreement to this salary and cannot be heard to complain that it was inequitable."[43]

The same is true here. Mullenix settled any then-existing pay disparity claims against UT Austin as of December 19, 2016. Because Mullenix released claims based on the pay differences that existed as of the 2016-2017 academic year, such pay differences cannot now form the basis of any EPA (or Title VII) pay disparity claim and, to the extent Mullenix asserts them here, such claims should be dismissed.[44]

To the extent that pay decisions made by the Law School *after* the 2016 Agreement resulted in any pay differences between Mullenix and the average pay of appropriate male comparators,[45] those

---

[42] *Anderson v. University of Northern Iowa*, 779 F.2d 441, 444 (8th Cir. 1985) (emphasis added).

[43] *Schwartz v. Florida Bd. of Regents*, 807 F.2d 901, 906 (11th Cir. 1987) ("Any other interpretation would be untenable for it would allow the parties to renegotiate the terms of the settlement agreement, and employers will have no incentive to enter settlement agreements.").

[44] When Mullenix signed her most recent release, there was a pay difference between Mullenix and the average pay of her three cherry-picked comparators of approximately $25,567, and a difference between Mullenix and the average pay for the group of eleven male comparators of $6,577. *See* Ex. CC, APP. 386-412 (Deere Expert Report). If either figure were relevant to this case, it would be the latter one.

[45] For purposes of this motion, UT Austin will address pay differences between Mullenix and her eleven claimed comparators. UT Austin does not concede that these eleven individuals are appropriate male comparators under the EPA or Title VII.

differences are explained by the Budget Committee's merit-based evaluation process and factors other than sex, as explained below.

## B.  The Budget Committee uses a merit-based system, and its conclusions are based on factors other than sex.

Even assuming pay differences between Mullenix and her claimed comparators could establish a *prima facie* case under the EPA, the EPA recognizes a defense for differences in pay produced by "a merit system."[46] The processes of the Budget Committee fall within that category. In the alternative, differences in pay are justified by the EPA when they are produced by "any other factor other than sex."[47] Here the differences in pay are produced by the Budget Committee's evaluations of performance, which certainly amount to a "factor other than sex."

The Fifth Circuit and many other courts have made clear that, in the higher education context, differences in faculty compensation that result from performance evaluations satisfy the affirmative defenses of the EPA.[48] In *Suter v. The University of Texas at San Antonio*, for instance, the Fifth Circuit affirmed summary judgment for the university where faculty compensation resulted from performance evaluations "based on a professor's teaching, research, and service, and the system also considers the seniority of professors—all of which proves affirmative defenses to a *prima facie* case under the Equal Pay Act."[49]

In addition, "'[a]ny factor other than sex' is a general, catch-all exception to the application of

---

[46] *Siler-Khodr*, 261 F.3d at 546.

[47] *Corning Glass Works v. Brennan*, 417 U.S. 188, 196 (1974) (the EPA "establishes four exceptions – three specific, and one a general catchall provision").

[48] *Suter v. Univ. of Tex. at San Antonio*, 495 F. App'x 506, 511–12 (5th Cir. 2012) (finding affirmative defense where faculty evaluations are "based on a professor's teaching, research, and service."); *Harrison-Pepper v. Miami Univ.*, 103 F. App'x 596, 600–01 (6th Cir. 2004) (university's faculty advisory committee "is merit-based, with amounts of raises determined by professors' (1) teaching and advising, (2) scholarship and creative activity, and (3) professional service."); *Willner v. Univ. of Kansas*, 848 F.2d 1023, 1031 (10th Cir. 1988) (finding a merit system where university committee "judged [faculty] on the basis of quality of their instruction, their research, and service").

[49] *Suter*, 495 F. App'x at 511.

the EPA."[50] Courts have found pay decisions to be based on a "factor other than sex" where pay rates were set after negotiation,[51] or were based on publications, research, differences in administrative duties, service to the university, and performance.[52] Courts have recognized that performance-based compensation systems often require some level of "subjectivity" or "judgment calls," but nevertheless qualify as "merit-based systems" or "factors other than sex" under the EPA.[53]

### 1.    *2017 Budget Committee & 2017-2018 Pay Decisions*

To demonstrate that the Committee's decisions were made on the basis of merit and not sex, it will help to briefly review the results of the Committee's deliberations for each year at issue in this

---

[50] *Blackburn v. Cypress Equities I, LP*, No. 12-CV-5030-D, 2014 WL 4771765, at *7 (N.D. Tex. Sept. 25, 2014) (citing *Wojciechowski v. Nat'l Oilwell Varco, L.P.*, 763 F. Supp. 2d 832, 852 (S.D. Tex. 2011)).

[51] *Suter v. Univ. of Tex. at San Antonio*, 859 F. Supp. 2d 851, 855-56 (W.D. Tex. 2012), *aff'd*, 495 F. App'x 506 (5th Cir. 2012).

[52] *See Schwartz v. Florida Bd. of Regents*, 954 F.2d 620, 623 (11th Cir. 1991) (affirming summary judgment where faculty raises were based on "factors other than sex," including "outstanding service to the university, [and] administrative duties"); *Wu v. Thomas*, 847 F.2d 1480 (11th Cir. 1988) (administrative duties, service to university and participation in Honors program are legitimate factors other than sex that can account for a pay differential); *Furfero v. St. John's Univ.*, No. 97-CV-7508, 1999 U.S. Dist. LEXIS 23464, at *19 (E.D.N.Y. June 4, 1999), *aff'd*, 208 F.3d 2020 (2nd Cir. 2000) (finding *Schwartz* persuasive in that it "upheld the defendant's claim that a pay differential resulting from the publication record among University Professors is a valid 'factor other than sex' under the EPA").

[53] *Kaplan v. United States*, 727 F. App'x 1011, 1015 (Fed. Cir. 2018) (affirming court's ruling that merit-based evaluation system that included subjective scoring sufficient to meet systemic and objective test, as "merit-based system does not require proof that the system is entirely free from subjectivity."); *Scott v. Dallas County Hosp. Dist.*, 85 F. App'x 361, 362 (5th Cir. 2003) (affirming summary judgment under the EPA based on a merit pay system, despite alleged inclusion of "the subjective component of employee evaluations."); *Wiley v. Am. Elec. Power Serv. Corp.*, 287 F. App'x 335, 342 (5th Cir. 2008) ("When a large number of factors are considered, it is inherent that a decision (or 'judgment call') must eventually be made about whether an individual is offered [increased compensation]. That does not mean the decision is subjective."); *Ambrose v. Summit Polymers, Inc.*, 172 F. App'x 103, 108 n. 3 (6th Cir. 2006) ("The application of these criteria may be characterized as 'subjective,' to a degree, but this is no bar to a finding that Summit's annual review procedure is merit-based."); *Schwartz*, 954 F.2d at 623–24 (rejecting professor-employee's assertion that reliance on "outstanding service to the university, administrative duties, publications, research, supervision of doctoral students, and performance" in setting salaries without a formal merit pay system is "too subjective."); *EEOC v. Aetna*, 616 F.2d 719 (4th Cir. 1980) ("Even assuming that Aetna's scheme for compensating Archer, as a new employee, was not a 'merit system', we are nevertheless satisfied that the pay differential was not based on sex.").

case. The 2017 Budget Committee, chaired by Tom McGarity, made its compensation recommendations to Dean Farnsworth based on its detailed review of the faculty and assessment of their performance under the Standards.[54] Mullenix's performance was rated as "baseline," and she received a $3,000 raise.[55] Of her eleven claimed comparators, eight were rated similarly and likewise received a $3,000 raise (including Bone, McGarity, and Westbrook), while three were rated "baseline plus" or "above baseline" and received $4,000 raises.[56] Notably, eleven other female faculty members received pay raises ranging from approximately $5,000 to $13,000, larger than the raises provided to Mullenix or her male comparators.[57] Decisions about Mullenix's pay, and that of her claimed comparators, were the product of a merit system and based on factors other than sex.

> 2.   *2018 Budget Committee & 2018-2019 Pay Decisions*

The 2018 Budget Committee, chaired by Lynn Baker, evaluated Mullenix's performance as below baseline (or "below ave"), while all of her eleven comparators were rated higher, from baseline minus to above baseline.[58] In addition, as noted above, the 2018 Budget Committee also voted for which faculty members would receive enhanced raises under FII-2.[59] The Committee did not vote Mullenix as one of the faculty members meriting an enhanced FII-2 raise. As a result of these evaluations, Mullenix received a raise of $1,500.[60] As for her eleven claimed comparators, five received

---

[54] Mullenix has admitted that Prof. McGarity was not "biased" against her. Ex. I, Mullenix Dep. at 95:4–7.

[55] Ex. DD at APP. 432-433 (McGarity Memo); Ex. V at APP. 326 (Compensation Letters), at 000326. In addition, a summary chart of the evaluation ratings and raise amounts for Mullenix, her eleven claimed comparators, and the three highest paid women on the faculty from 2017 to 2021 are set forth in Ex. SS, APP. 746-747.

[56] Ex. DD, APP. 413–445 (McGarity Memo); Ex. V (Compensation Letters) at APP. 298, 310, 314, 316, 320, 324, 327, 329, 330, 333, 344; *see also* Ex. SS, APP. 746-747 (Summary Chart).

[57] Ex. V, APP. 292–354 (Compensation Letters). Many of these female faculty received substantial raises as a result of the 2015 FII-1 awards. Ex. UU, Farnsworth Dep. (03.31.21), Ex. 7 at APP. 813.

[58] Ex. X, APP. 357–359 (Baker Memo).

[59] Ex. Q, Baker Dep. 199:2–15.

[60] Ex. EE, APP. 446–503 (Compensation Letters); Ex. BB, APP. 385–86 (FII-2 Recipient List); *see also* Ex. SS, APP. 746-747 (Summary Chart).

a $10,000 raise as a result of being recipients of FII-2 funds, and the other six (all of whom received higher performance evaluations than Mullenix) received raises from $3,000 to $5,000.[61] Eight female faculty members received raises higher than Mullenix or her eleven claimed comparators.[62] The decision about Mullenix's pay and the pay of her claimed comparators was again the product of a merit system and resulted from factors other than sex.

       3.       *2019 Budget Committee & 2019-2020 Pay Decisions*

The 2019 Budget Committee, chaired by McGarity, evaluated Mullenix's performance as "baseline," and she received a $6,500 raise.[63] Of her eleven claimed comparators, five received a $10,000 raise resulting from the FII-2 funding decisions made in 2018.[64] As to the remaining six comparators, three were rated "baseline" and received the same $6,500 raise as Mullenix; the other three were rated "baseline plus" and received $10,000.[65] Eight female faculty members received raises higher than those received by Mullenix or any of her claimed comparators.[66] Mullenix's pay, and that of her claimed comparators, was again the product of a merit system and resulted from factors other than sex

       4.       *2020 Budget Committee, 2021 Budget Committee & 2021-2022 Pay Decisions*

The 2020 Budget Committee, chaired by McGarity, evaluated each faculty member and provided the evaluations to the Dean.[67] For budgetary reasons, most UT faculty members—including

---

[61] *See* Ex. SS, APP. 746–747 (Summary Chart).
[62] Ex. EE, APP. 446–503 (Compensation Letters).
[63] Ex. FF at APP. 517-518, 524-534 (McGarity 2019 Memo); Ex. GG, APP. 537–91 (Compensation Letters); Ex. SS, APP. 746-747 (Summary Chart).
[64] Bone, Forbath, McGarity, Rabban, and Westbrook. *See* Ex. SS, APP. 746-747 (Summary Chart).
[65] Goode, Peroni, and Sage were rated "baseline" and received a $6,500 raise while Hu, Levinson, and Powe were rated "above baseline" and received a $10,000 raise. *See* Ex. SS, APP. 746–747 (Summary Chart).
[66] Ex. GG, APP. 537–591 (Compensation Letters); *see also* Ex. SS, APP. 746-747 (Summary Chart).
[67] Ex. HH at APP. 609, 613-614, 616-625 (McGarity 2020 memo).

Mullenix and all of her claimed comparators—received no raise in 2020.[68] The 2020 salary decisions for Mullenix and her claimed comparators were based on factors unrelated to sex.

The 2021 Budget Committee, chaired by Derek Jinks, evaluated the performance of all tenured faculty members during 2020.[69] Since merit raises had not been available in 2020, Dean Farnsworth and the Committee also considered the prior year's evaluations in determining appropriate raise amounts for 2021.[70] Mullenix's performance was rated as "baseline" both years, as were four of her claimed comparators (Forbath, Peroni, Rabban, and Westbrook).[71] Mullenix and Peroni received $12,000 annual raises, but they did not receive any FII-2 funds.[72] Despite their comparable performance, Forbath, Rabban, and Westbrook received only $8,000 in annual raises because they were already recipients of FII-2 funds, resulting in total raises for these three of $18,000.[73] Goode received a rating of "baseline plus" in 2021 and "baseline minus" in 2020—averaging to "baseline— and he received a raise of $12,000, the same as Mullenix and Peroni.[74] Two comparators (Levinson and Hu) were rated "above baseline" or "baseline plus" in one or both years and received an $18,000 or $20,000 annual raise, higher than Mullenix, Peroni, and Goode. Two other comparators (Powe and Sage) were rated "below baseline" or "baseline minus" in one or both years and received an $8,000 or $10,000 annual raise, lower than Mullenix, Peroni, and Goode.[75] Finally, two claimed comparators

---

[68] *See* Ex. UU, Farnsworth Dep. (03.31.21) 48:5–13; Ex. II, APP. 627–629 (2020 Salary Array); Ex. RR, APP. 692–745 (Compensation Letters); Ex. SS, APP. 746–747 (Summary Chart).

[69] Ex. JJ, APP. 630–639 (Jinks 2021 Memo); Ex. KK, APP. 640–645 (Jinks Decl.) ¶ 5.

[70] Ex. LL, APP. 659–664 (Farnsworth Decl.) ¶¶ 7–8; Ex. KK, APP. 640–645 (Jinks Decl.) ¶ 7.

[71] Ex. A, APP. 1–05 (2021 Raise Spreadsheet); Ex. LL, APP. 659–664 (Farnsworth Decl.) ¶¶ 11, 16, 18, 20–21; Ex. KK, APP. 640–645 (Jinks Decl.) ¶¶ 12, 17, 19, 21–22; Ex. JJ, APP. 630–639 (Jinks 2021 Memo) at 000636–638; Ex. TT, APP. 748–801 (Compensation Letters) at 000766, 782–83, 786, 798; *see also* Ex. SS, APP. 746–47 (Summary Chart).

[72] Ex. SS, APP. 746–747 (Summary Chart).

[73] Ex. SS, APP. 746–747 (Summary Chart); *see also* Ex. LL, APP. 659–664 (Farnsworth Decl.) ¶¶ 11, 18, 20; Ex. KK, APP. 640–645 (Jinks Decl.) ¶¶ 12, 19, 21.

[74] Ex. SS, APP. 746–747 (Summary Chart).

[75] *Id.*

(Bone and McGarity) were rated "baseline plus" in one or both years.[76] Despite their above-average performance evaluations, Bone and McGarity were allotted lower annual raises of $5,000 and $10,000, respectively, because they were already recipients of FII-2 funds and because of their placement near the top of the overall salary structure, resulting in total raises of $15,000 and $20,000, respectively.[77] Five female faculty received raises larger than any of Mullenix's male comparators.[78] In summary, Mullenix's pay for the current 2021-2022 academic year, and the pay of her claimed comparators, was the product of a merit system and resulted from factors other than sex.

     5.     *Mullenix's Admissions Undermine Her Claims*

In her deposition, Mullenix admitted that the Budget Committee's decisions about her pay were based on reasons other than sex. First, Mullenix's chief claimed comparator is Bone, but Mullenix acknowledges that Bone writes "law and economics" scholarship and that she does not and that reasonable minds may differ on the relative merit of their scholarship.[79] In Mullenix's view, the Budget Committee has a "bias" in favor of the kind of scholarship that Bone produces and that she does not produce.[80] UT Austin does not concede the existence of any "bias" or particular preference that Committee members may have for one type of scholarship over another. But even if such a preference or "bias" existed (as Mullenix claims), it would be a factor other than sex in compliance with the Equal Pay Act. While Mullenix may believe that this litigation is an appropriate vehicle for attacking every feature of the Committee's work that she finds disagreeable, the legal question is whether the pay differences claimed by Mullenix are based on a factor *other than sex*. Even she believes that they are.

Second, Mullenix testified that she spends an "enormous amount of work" writing Supreme

---

[76] *Id.*
[77] Ex. LL, APP. 659–664 (Farnsworth Decl.) ¶¶ 10, 15; Ex. SS, APP. 746–747 (Summary Chart).
[78] Ex. A, APP. 1–05 (2021 Raise Spreadsheet); Ex. TT, APP. 748–801 (Compensation Letters), at 000762, 776, 781, 796, 797; *see also* Ex. SS, APP. 746–47(Summary Chart).
[79] Ex. I, Mullenix Dep. 87:11–88:4, 215:2–22.
[80] *Id.* at 215:2–22.

Court Previews for the American Bar Association.[81] She has produced hundreds of pages of them—the equivalent, she says, of multiple books.[82] But the Committee does not interpret the Standards as counting such previews as "scholarship" for purposes of evaluation.[83] Mullenix made clear that she is fully aware of this position of the Committee, although she strongly disagrees with it. Years ago, Mullenix wrote to a colleague:

> Our wonderful Budget Committee, consisting of about a dozen of my colleagues, plus the Dean, who conduct annual compensation review of each of us, does not count towards my publications anything I write in Preview, or in the National Law Journal, or on any blogs, such as SCOTUS blog. I can only conclude they exclude this stuff because none of them -- not any of my colleagues -- does this.[84]

In her deposition, Mullenix was asked whether the Committee's determinations on this point had negatively affected her pay. She replied: "Absolutely."[85] According to Mullenix, the reason why she and her comparators do not receive identical pay is that she invests her time in work that many of her colleagues do not regard as scholarship at all.[86] Again, the University has a complete defense under the EPA if Mullenix and her comparators are paid differently for a reason other than sex, which Mullenix here concedes. While her earlier admission about the Committee's purported preference for economically-based scholarship was perhaps relevant only to Bone, this further admission provides a reason other than sex for differences between the pay received by Mullenix and the pay received by *all* of her claimed comparators. That is so because Mullenix admits that she is the *only* member of the faculty who produces these previews, which she knows the Committee has not collectively credited as she believes it should.[87]

---

[81] *Id.* at 180:23–182:5.
[82] *Id.*
[83] *Id.*; Ex. Q, Baker Dep. 115:1-6; Ex. H, McGarity Dep. 135:8–136:1; Ex. G, Forbath Dep. 95:5–14.
[84] Ex. I, Mullenix Dep. 177:12–179:25, Ex. 11, 180:23–182:5.
[85] *Id.* at 183:6–19.
[86] *Id.* at 180:1–182:24.
[87] *Id.* at 30:3–6.

**C.**      **The Title VII claim fails because all pay decisions were made for legitimate, non-discriminatory reasons.**

The Title VII wage discrimination claim is analyzed using the *McDonnell Douglas* burden shifting framework.[88] UT Austin assumes, at this stage only, that Mullenix has set out a *prima facie* case, and it therefore "bears the burden of producing a legitimate, non-discriminatory reason for its actions."[89] UT Austin must "merely proffer the nondiscriminatory based reasons, not prove them."[90] "Once [UT Austin] offers a legitimate, nondiscriminatory reason for the plaintiff's treatment, the presumptions of the *McDonnell Douglas* framework dissipate, and the plaintiff bears the ultimate burden of persuading the trier of fact that the defendant engaged in intentional discrimination."[91]

Here, UT Austin's affirmative defenses to the EPA claims—a merit system and the factors other than sex outlined above—clearly qualify as legitimate, non-discriminatory reasons for pay differences in the *McDonnell Douglas* analysis.[92] This more than satisfies UT Austin's "exceedingly light" burden.[93] It is therefore Mullenix's ultimate burden to "produce substantial evidence indicating that

---

[88] *Badgerow v. Rej. Props.*, 974 F.3d 610, 617 (5th Cir. 2020) (quoting *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 522 (5th Cir. 2008)). To make this showing, Plaintiff must demonstrate through evidence that her work was "nearly identical to those of a better-paid employee who is not a member of the protected class." *Badgerow*, 974 F.3d at 617.

[89] *Nasti v. CIBA Specialty Chems. Corp.*, 492 F.3d 589, 593 (5th Cir. 2007) (internal citations omitted).

[90] *Sims v. Wells Fargo Bank, N.A.*, 298 F. Supp. 3d 987, 992 (S.D. Tex. 2018) (internal quotations omitted) (citing *Lenihan v. Boeing Co.*, 994 F. Supp. 776, 798 (S.D. Tex. 1998)).

[91] *Nasti*, 492 F.3d at 593 (5th Cir. 2007) (internal citations omitted).

[92] *See generally County of Washington v. Gunther*, 452 U.S. 161 (1981) (discussing the incorporations of the EPA's affirmative defenses into Title VII for purposes of unequal pay claims); *Peters v. Shreveport*, 818 F.2d 1148, 1157 (5th Cir. 1987) ("Title VII incorporates the Equal Pay Act's four affirmative defenses -- including the 'factor other than sex' exception at issue here -- with respect to sex discrimination in the payment of wages, thanks to the so-called Bennett Amendment."). Courts have held that merit evaluations of a faculty member's scholarship constitutes legitimate, non-discriminatory reasons for pay differences. *See Lynn v. Regents of Univ. of Cal.*, 656 F.2d 1337, 1344 (9th Cir. 1981) ("Without doubt, deficient scholarship is a legitimate, nondiscriminatory reason to deny salary increases or tenure."); *Monroe-Lord v. Hytche*, 668 F. Supp. 979, 994 (D. Md. 1987) (granting summary judgment on Title VII claim where the plaintiff's scholarship, "evaluated by the stature of the journal in which a piece is published," was deficient compared to her peers).

[93] *Sims*, 298 F. Supp. 3d at 992.

th[is] proffered legitimate nondiscriminatory reason is a pretext for discrimination."[94] Because she cannot prove this justification to be "false or unworthy of credence" and cannot otherwise prove intentional discrimination, her claim fails and must be dismissed.[95]

    1.    *Each pay decision made since the 2017 was based on legitimate, non-discriminatory factors.*

As shown above, each of the pay decisions at issue since 2017 resulted from the Budget Committee evaluation process and FII votes, which produced recommendations presented to Dean Farnsworth and ultimate decisions about pay. Mullenix asserts that the Budget Committee made inaccurate assessments of her academic performance,[96] but this is immaterial. Even assuming she is right (she is not), it is well settled that "an incorrect belief in the underlying facts may constitute a legitimate, nondiscriminatory reason" for employment decisions.[97] The evidence shows that Dean Farnsworth relied on the Committee's assessments of faculty and its recommendations, and Mullenix has no competent evidence demonstrating otherwise.

UT Austin has presented legitimate, non-discriminatory reasons for every pay decision challenged in this case. Mullenix must provide *evidence*, not allegations or opinions, showing that the Committee's recommendations were a pretext for intentional discrimination on the basis of sex. She cannot.

---

[94] *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 233 (5th Cir. 2015) (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)).

[95] *Id.*; *Nasti*, 492 F.3d at 593 (internal citations omitted).

[96] *E.g.*, ECF 25, at ¶¶ 54–62 (alleging Budget Committees inaccurately assess Plaintiff's scholarship in comparison to other faculty).

[97] *Hervey v. Miss. Dep't of Educ.*, 404 F. App'x 865, 871 (5th Cir. 2010); *Fairly v. Wal-Mart Stores*, 216 F. Supp. 3d 708, 738 and n. 334 (E.D. La. 2016) (stating similarly for gender-based pay discrimination); *see also Byrd v. Auburn Univ. at Montgomery,* No. 05-CV-835, 2007 WL 1140424, at *4 (M.D. Ala., Apr. 17, 2007) (finding a professor's Title VII pay disparity claim failed without evidence of intentional gender-based discrimination, because "[t]he mere fact that these men were paid more than her is insufficient"). To be sure, however, there is also no competent evidence that the decisions were, in fact, "incorrect" or based on erroneous evaluations.

2.      *Mullenix cannot prove pretext.*

A disparate treatment claim under Title VII "requires a showing of discriminatory motive."[98] Allegations of pay disparity standing alone, even if true, are insufficient to show discriminatory motive or intentional discrimination.[99] No competent evidence in this case shows discriminatory intent. Similarly, there is no evidence that Dean Farnsworth used the Budget Committee's recommendations as pretext for discrimination. None of the witnesses who had actual knowledge of the Committee's work claimed that the Committee or Dean Farnsworth ever considered Mullenix's sex when making pay recommendations or decisions, or made any derogatory comments based on Mullenix's sex.[100] Rather, all evidence indicates that each Budget Committee evaluated faculty members in a careful process, guided by the Standards, in an effort to fairly evaluate faculty members and set their compensation.[101] Many of those who received larger raises than Mullenix were women. There is no evidence that the evaluation process was pretextual. Accordingly, summary judgment is warranted on the Title VII claim as well.

---

[98] *Thibodeaux-Woody v. Houston Cmty. College*, 593 F. App'x 280, 285 n. 4 (5th Cir. 2014); *see also Lenihan*, 994 F. Supp. at 797 (listing cases).

[99] *See McCullough v. Xerox Corp.*, 224 F. Supp. 3d 193, 199 (W.D.N.Y. Dec. 14, 2016) ("It is well settled that claims of disparities in pay, without more, are insufficient to demonstrate discriminatory animus[]"); *Gould v. Fla. Atl. Univ. Bd. of Trs.*, No. 10-CV-81210, 2011 WL 13227873, at *2 (S.D. Fla. Nov. 15, 2011) ("While salary decisions made at the whim of administrators may lack a solid foundation, it does  follow that such decisions were made with the intent to discriminate against any employees based on any protected category."); *Lee v. Burwell*, No. 16-CV-366, 2018 WL 4964547, at *11 (D.N.M. Oct. 15, 2018) ("Plaintiff has not pointed to any evidence regarding the basis for the pay difference from which an inference of discriminatory intent could be made.").

[100] *See* Ex. S, Bone Dep. 52:6–10; Ex. H, McGarity Dep. 110:7–10; Ex. P, Chesney Dep. 111:2–112:6, 165:5–10, 186:2–190:7; Ex. T, Goode Dep. 80:11–16, 82:3–12; Ex. R, Westbrook Dep. 180:16–189:8; *see also, e.g.*, Ex. MM, APP. 665–71 (Dzienkowski Decl.); Ex. NN, APP. 672–75 (Johanson Decl.); Ex. OO, APP. 676–680 (Bintliff Decl.); Ex. PP, APP. 681–684 (Bangs Decl.); Ex. QQ, APP. 685–691 (Klein Decl.).

[101] *See, e.g.*, Ex. S, Bone Dep. 120:7–121:22, 122:7–19; Ex. P, Chesney Dep. 185:3–190:7; Ex. T, Goode Dep. 220:17–25.

## IV.    CONCLUSION

Professor Mullenix disagrees with her colleagues about the value of her scholarship and has many other grievances about the way that the Law School has been administered over the course of her career. The Court should decline her invitation to conduct a trial about those issues, or to sit as an appellate tribunal to oversee the Committee's decisions about the merit of her scholarship. The Law School, and the Budget Committee, are free to reach conclusions that Mullenix does not like so long as the decisions are based on factors other than sex. The undisputed evidence in this case shows that Mullenix, while highly compensated, earns less than some of her colleagues—male and female alike—because the Budget Committee does not value her performance as highly as it values theirs. The Court should therefore grant summary judgment.


Dated: October 4, 2021                          Respectfully submitted,

                                                */s/ Darren Gibson*
                                                Darren Gibson
                                                Texas State Bar No.  24068846
                                                Kelli Fuqua
                                                Texas State Bar No. 24097713
                                                Andrew R. Gray
                                                Texas State Bar No. 24106023
                                                LITTLER MENDELSON, P.C.
                                                A Professional Corporation
                                                100 Congress Avenue, Suite 1400
                                                Austin, Texas  78701
                                                512.982.7250
                                                512.982.7248 (Fax)
                                                dgibson@littlercom
                                                kfuqua@littler.com
                                                argray@littler.com

                                                **ATTORNEYS FOR DEFENDANT**

## <u>CERTIFICATE OF SERVICE</u>

On October 4, 2021, I electronically submitted the foregoing document with the Clerk of the Court using the Electronic Case Filing system of the Court. I hereby certify that I have served all parties of record as follows:

Colin Wash
Jairo Castellanos
Wiley Walsh, P.C.
1011 San Jacinto Blvd, Ste 401
Austin, Texas 78701
colin@wileywalsh.com
jairo@wileywalsh.com

Paige E. Melendez
Texas Bar No. 24121731
ROB WILEY, P.C.
2613 Thomas Ave.
Dallas, TX 75204
Telephone: (214) 528-6500
pmelendez@robwiley.com

_/s/ Darren Gibson_____
Darren Gibson