**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **LINDA SUSAN MULLENIX,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO.  1:19-CV-1203-LY** |
| | § | |
| **UNIVERSITY OF TEXAS AT AUSTIN** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR
LEAVE TO FILE SECOND AMENDED COMPLAINT**

Darren Gibson
Texas State Bar No.  24068846
Kelli Fuqua
Texas State Bar No. 24097713
Andrew R. Gray
Texas State Bar No. 24106023

LITTLER MENDELSON, P.C.
A Professional Corporation
100 Congress Avenue, Suite 1400
Austin, Texas  78701
512.982.7250
512.982.7248 (Fax)
dgibson@littler.com
kfuqua@littler.com
argray@littler.com

**ATTORNEYS FOR DEFENDANT**

## <u>TABLE OF CONTENTS</u>

Table of Authorities ....................................................................................................................ii

I.    INTRODUCTION..................................................................................................................1

II.    PROCEDURAL BACKGROUND........................................................................................2

III.    MULLENIX'S PROPOSED SECOND AMENDED COMPLAINT......................................3

IV.    ARGUMENTS AND AUTHORITIES ................................................................................5

    A.   Standard of Review. ..................................................................................................5

    B.   Mullenix's Retaliation Claims Would Not Survive a Motion to Dismiss...................5

        *1.   Many of Mullenix's alleged adverse employment actions occurred prior to her claimed protected activity and are time-barred.* ......................................................................................6

        *2.   Mullenix's more recent alleged adverse employment actions are not materially adverse* ...............................8

        *3.   Mullenix has not alleged any causal link to support her retaliation claim.* .................................................11

    C.   Mullenix's Re-Asserted Retaliation Claims Cannot Survive Summary Judgment. ....................14

        *1.   Mullenix asked Dean Farnsworth to offer her a retirement package.* ........................................................15

        *2.   Dean Farnsworth's proposed raises for Mullenix and many other faculty members were reduced following consultation with the Budget Committee* .................................................................17

    D.   The Remaining Allegations in Mullenix's Second Amended Complaint. ...................................19

V.    CONCLUSION....................................................................................................................20

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ackel v. Nat'l Comms., Inc.*,
  339 F.3d 376 (5th Cir. 2003) ..................................................7

*Adams Family Trust v. John Hancock Life Ins. Co.*,
  U.S.A. 424 F. App'x 377 (5th Cir. 2011) ..............................5

*Adams v. Groesbeck Indep. Sch. Dist.*,
  475 F.3d 688 (5th Cir. 2007) .................................................11

*Alkhawaldeh v. Dow Chem. Co.*,
  851 F.3d 422 (5th Cir. 2017) .............................................12, 15

*Allen v. Indep. Sch. Dist.*,
  689 F. App'x. 238 (5th Cir. 2017) ........................................20

*Aquilino v. Univ. of Kan.*,
  268 F.3d 930 (10th Cir. 2001) ...............................................9

*Armstrong v. Marathon Petro. Co.*,
  No. 3-16-CV-00115, 2018 WL 2976732 (S.D. Tex. May 1, 2018)........................................15

*Baldwin v. Holder*,
  No. CIV.A. H-09-842, 2011 WL 2078614 (S.D. Tex. May 26, 2011)....................................12

*Ballard v. Tex. Dep't of Hous. & Cmty. Affairs*,
  No. 05-CV-311, 2007 WL 9701259 (W.D. Tex. Oct. 22, 2007)................................................8

*Barrow v. City of New Orleans S.S. Ass'n*,
  10 F.3d 292 (5th Cir. 1994) .............................................11, 17

*Brandon v. Sage Corp.*,
  808 F.3d 266 (5th Cir. 2015) ............................................8, 10

*Bridgeforth v. Salazar*,
  831 F.Supp.2d 132 (D.D.C. 2011) .........................................9

*Bryant v. Citicorp Data Systems, Inc.*,
  202 F.3d 266 (5th Cir. 1999) ...............................................19

*Burlington N. & Santa Fe Ry. Co. v. White*,
  548 U.S. 53 (2006)..........................................................6, 8

*Cabral v. Brennan*,
853 F.3d 763 (5th Cir. 2017) .........................................................................8

*Clark Cty. Sch. Dist. v. Breeden*,
532 U.S. 268 (2001)......................................................................................12

*Cooksey v. City of Gautier*,
No. 1:16-CV-448, 2018 WL 3977880 (S.D. Miss., Aug. 20, 2018)...........5

*Corley v. Louisiana*,
816 F.Supp.2d 297 (M.D. La. 2011) .............................................................9

*Davis v. Dallas Indep. Sch. Dist.*,
448 F. App'x 485 (5th Cir. 2011) ................................................................14

*DeHart v. Baker Hues Oilfield Operations*,
214 F. App'x. 437 (5th Cir. 2007) ...............................................................12

*Deines v. Tex. Dep't of Protective & Reg. Servs.*,
164 F.3d 277 (5th Cir. 1999) .......................................................................14

*DeLoach v. Woodley*,
405 F.2d 496 (5th Cir. 1968) (per curiam)....................................................5

*Demuren v. Old Dominion Univ.*,
33 F. Supp. 2d 469 (E.D. Va. 1999), *aff'd*, 188 F.3d 501 (4th Cir. 1999).............9

*Edmonson v. Bd. of Trs.*,
258 F. App'x 250 (11th Cir. 2007) ................................................................9

*Feist v. La., Dep't of Justice, Office of the Atty. Gen.*,
730 F.3d 450 (5th Cir. 2013) .......................................................................15

*Foman v. Davis*,
371 U.S. 178 (1962).......................................................................................5

*George v. Harris Cty.*,
No. H-10-3235, 2012 WL 2744332 (S.D. Tex. July 9, 2012) ..................20

*Goring v. Board of Sup'rs of Louisiana State Univ. Agr. & Mechanical College*,
414 F. App'x 630 (5th Cir. 2011) ................................................................10

*Guerrero v. FedEx Freight, Inc.*,
2013 WL 5563699 (S.D. Tex. Oct. 8, 2013)..................................................8

*Hamic v. Harris County W.C. & I.D. No. 36*,
184 F. App'x 442 (5th Cir. 2006) ................................................................13

*Hamilton v. Sikorsky Aircraft Corp.*,
  No. 9:17-CV-80289, 2018 WL 10704410 (S.D. Fla. Mar. 6, 2018), *aff'd*, 760
  F. App'x 872 (11th Cir. 2019) .............................................................12

*Hanks v. Shinseki*,
  No. 3:08-1594-G, 2010 WL 3000835 (N.D. Tex. July 28, 2010) .........................................12

*Heath v. Bd. Of Supervisors for the S. Univ. & Agric. & Mech. College*,
  850 F.3d 731 (5th Cir. 2017) .............................................................8

*Higbie v. Kerry*,
  605 F. App'x 304 (5th Cir. 2015) .............................................................10

*Jenkins v. City of San Antonio Fire Dept.*,
  784 F.3d 263 (5th Cir. 2015) .............................................................8

*Jones v. Jefferson Par.*,
  No. CIV.A. 12-2191, 2013 WL 6072719 (E.D. La. Nov. 18, 2013) .........................................12

*Kitty Hawk Aircargo, Inc. v. Chao*,
  418 F.3d 453 (5th Cir. 2005) .............................................................4

*Kokesh v. Curlee*,
  --- F.4th. ---, 2021 WL 4269568 (5th Cir. Sept. 21, 2021) .............................................15, 16

*Krause v. City of La Crosse*,
  246 F.3d 995 (7th Cir. 2001) .............................................................17

*Ladner v. Walmart, Inc.*,
  834 Fed. Appx. 893 (5th Cir. 2020).............................................................12

*Lindsley v. TRT Holdings, Inc.*,
  984 F.3d 460 (5th Cir. 2021) .............................................................6, 8, 15

*Lushute v. Louisiana, Dep't of Soc. Servs.*,
  479 F. App'x 553 (5th Cir. 2012).............................................................8

*Lyons v. Katy Indep. Sch. Dist.*,
  964 F.3d 298 (5th Cir. 2020) .............................................................12

*Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*,
  751 F.3d 368 (5th Cir. 2014) .............................................................5

*Mato v. Baldauf*,
  267 F.3d 444 (5th Cir. 2001) .............................................................14

*Montgomery-Smith v. George*,
  810 F. App'x. 252 (5th Cir. 2020) .............................................................13

iv

*Mylett v. City of Corpus Christi,*
   97 F. App'x. 473 (5th Cir. 2004) ........................................................................11

*Overseas Inns S.A. P.A. v. United States,*
   911 F.2d 1146 (5th Cir. 1990) ...........................................................................20

*Perez v. Region 20 Educ. Serv. Ctr.,*
   307 F.3d 318 (5th Cir. 2002) .............................................................................11

*Perkins v. Child Care Assocs.,*
   51 F. App'x 469 (5th Cir. 2018) .........................................................................12

*Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs,*
   810 F.3d 940 (5th Cir. 2015) .............................................................................12

*Quintanilla v. Tex. Television, Inc.,*
   139 F.3d 494 (5th Cir. 1999) ...............................................................................5

*Rosenzweig v. Azurix Corp.,*
   332 F.3d 854 (5th Cir. 2003) ...............................................................................5

*Sandstad v. CB Richard Ellis, Inc.,*
   309 F.3d 893 (5th Cir. 2002) .............................................................................14

*Simmonds v. Nat'l Oilwell Varco,*
   Civ. A. No. 12-2109, 2013 WL 13140498 (S.D. Tex. Dec. 18, 2013) ...................19

*Smith v. EMC Corp.,*
   393 F.3d 590 (5th Cir. 2004) ...............................................................................5

*Starnes v. Wallace,*
    849 F.3d 627 (5th Cir. 2017) ............................................................................14

*Tepperwien v. Entergy Nuclear Operations, Inc.,*
   663 F.3d 556 (2nd Cir. 2011)............................................................................17

*The Bar Grp., L.L.C. v. Business Intelligence Advisors, Inc.,*
   215 F. Supp. 3d 524 (S.D. Tex. 2017) .................................................................5

*Thibodeaux-Woody v. Houston Cmty. College,*
   593 F. App'x. 280 (5th Cir. 2014) ......................................................................18

*Thomas v. Kent,*
   401 F. App'x 864 (5th Cir. 2010) .......................................................................10

*Whaley v. City Univ. of N.Y.,*
   555 F. Supp. 2d 381 (S.D.N.Y. 2008)....................................................................9

*Whittington v. Trustees of Purdue Univ.*,
   No. 2:09-CV-9, 2012 WL 685502 (N.D. Ind. Mar. 2, 2012)....................................................9

**Statutes**

29 U.S.C. § 206(d) ("Equal Pay Act")..................................................................................... *passim*

Title VII of the Civil Rights Act of 1964............................................................................ *passim*

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **LINDA SUSAN MULLENIX,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO.  1:19-CV-1203-LY** |
| | § | |
| **UNIVERSITY OF TEXAS AT AUSTIN** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR
LEAVE TO FILE SECOND AMENDED COMPLAINT**

Defendant The University of Texas at Austin ("UT Austin" or "Defendant") files this Response in Opposition to Plaintiff Linda Mullenix's ("Mullenix" or "Plaintiff") Motion for Leave to File her Second Amended Complaint.[1]

## I. INTRODUCTION

Mullenix's proposed Second Amended Complaint ("SAC") contains 116-pages and 504-paragraphs, none of which cures the deficiencies in her previously-dismissed retaliation claims.[2] As in her prior pleadings, Mullenix alleges that she has been engaging in protected activity for decades and has been subject to retaliation by multiple Deans (both men and women) and a host of Law School faculty since the mid-1990s. Yet after over a year of discovery, Mullenix restates the same purported protected activity and the same alleged adverse actions (albeit in more detail), without including any connective facts that would create a chronology of events from which retaliation may be plausibly inferred. Accordingly, Mullenix's reassertion of retaliation claims in the SAC is futile under the Rule 12(b) pleading standard.

---

[1] ECF 127, 127-1.
[2] ECF 18, 61, 90.

Mullenix's claims are also futile under Rule 56, as there is no evidence of any retaliatory intent on the part of UT Austin. For example, Mullenix has alleged (under oath) that Dean Farnsworth retaliated against her when he offered her an early retirement package; yet indisputable evidence—a recording of the relevant conversation—makes clear that Dean Farnsworth made this offer only after Mullenix *expressly asked him to do so*. Similarly, Mullenix alleges Dean Farnsworth retaliated by lowering her raises recommended by the Budget Committee, when the evidence is clear that Dean Farnsworth initially proposed higher raises that were lowered for Mullenix and others only *after* consultation with the Budget Committee.

As to her claims for pay discrimination under the Equal Pay Act ("EPA") and Title VII of the Civil Rights Act of 1964 ("Title VII"), UT Austin does not challenge that Mullenix has previously satisfied her pleading burden with respect to those claims, which are currently the subject of summary judgment motions.[3] The additional factual allegations included in the SAC are unnecessary, relate to events long outside the relevant time period for her claims, and contain second-hand, hearsay and speculation. The only effect of permitting Mullenix's additional factual allegations as to those claims would be to require UT Austin to answer the 116-page SAC, which would unfairly prejudice UT Austin.

## II. PROCEDURAL BACKGROUND

On December 12, 2019, Mullenix filed her Original Complaint, asserting violations of the EPA and claims of discrimination and retaliation under Title VII.[4] In response to UT Austin's motion to dismiss, the Court dismissed the Title VII retaliation claim with prejudice.[5] On December 4, 2020, Mullenix filed her First Amended Complaint, re-asserting her previously-dismissed Title VII

---

[3] ECF 129, 130.
[4] ECF 1.
[5] ECF 18 (Order granting Motion to Partially Dismiss).

2

retaliation claim.[6] UT Austin again moved to dismiss her retaliation claims, and the Court again agreed, dismissing Mullenix's retaliation claims under both Title VII and the EPA with prejudice.[7]

On July 28, 2021, the Court entered a modified scheduling order, requiring that all amended or supplemental pleadings be filed on or before September 24, 2021.[8] Mullenix filed her Motion for Leave to File her Second Amended Complaint on that day, asserting her previously-dismissed claims of retaliation under Title VII and the EPA for the third time.

### III. MULLENIX'S PROPOSED SECOND AMENDED COMPLAINT

The 116-page, 504-paragraph SAC seeks to re-assert two previously-dismissed claims: (1) that Plaintiff was "retaliated against for asserting violations of the Equal Pay Act"; and (2) that Plaintiff was retaliated against in violation of Title VII "for speaking up against [UT Law's] discriminatory compensation practices."[9] In addition, the SAC repleads Mullenix's live claims: (1) pay discrimination under the Equal Pay Act ("EPA"), and (2) sex discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") based on her pay.[10]

As to the factual allegations, the SAC includes decades-old information that is well outside the relevant time frame for Mullenix's claims. For example, the SAC alleges that in the spring of 1994, then-Dean Mark Yudof retaliated against Mullenix by rescinding an offer to appoint Mullenix the Associate Dean for Academic Affairs.[11] Yudof, who left the Deanship of the Law School in 1994 to become the Executive Vice President and Provost, has not worked at UT Austin since 1997.[12] Similarly,

---

[6] ECF 25.
[7] ECF 61, 90.
[8] ECF 106.
[9] ECF 127-1 at ¶¶ 483-489, 497-502. These retaliation claims mirror those alleged in Plaintiff's First Amended Complaint. *Compare* ECF 127-1 at ¶¶ 487, 497-502, *with* ECF 25 at ¶¶ 148, 158-163.
[10] *Compare* ECF 127-1 at ¶¶ 483-489, 490-496, *with* ECF 25 at ¶¶ 144-157.
[11] ECF 127-1 at ¶ 425-426.
[12] *See Mark Yudof Faculty Profile*, UC BERKELEY SCH. OF LAW, https://www.law.berkeley.edu/our-faculty/faculty-profiles/mark-yudof/ (last visited Oct. 6, 2021). The Court may take judicial notice of public records for purposes of evaluating a motion to dismiss, and UT Austin requests it does so here.

Mullenix alleges that that in the fall of 1995, former Law School Professor Samuel Issacharoff purportedly sent a "kill letter" when Mullenix was being considered for a faculty position at the University of Michigan School of Law.[13] Issacharoff has not worked at the Law School since 1999.[14] Although Mullenix has added additional details in her SAC, these are essentially the same allegations Mullenix made previously to support her retaliation claims.[15] She also repeats the same allegations regarding more recent purportedly retaliatory acts regarding retirement offers, committee assignments, teaching awards, conference speaking invitations, and publication on the Law School's website.[16]

Moreover, much of the additional information contained in the SAC relates solely to Mullenix's disagreements with UT Law's Budget Committee process, including the Committee's evaluations of Mullenix's performance. These allegations include cherry-picked deposition testimony from Committee members in an attempt to question the criteria used by the Committee in evaluating faculty performance, and the differences in the respective weights given to faculty members' teaching, scholarship, and service.[17] In addition, Mullenix goes into exhaustive detail regarding her subjective views of her scholarship, attempting to show that her published Supreme Court previews, blog posts, or casebook revisions warranted greater credit than what the Budget Committee afforded them.[18] Yet the SAC does not describe how these allegations support her claims that pay decisions or other alleged adverse actions were retaliatory.

---

*See Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005) (taking judicial notice of the information published on the website of the National Mediation Board).

[13] ECF 127-1 at ¶¶ 427-435.

[14] *See Samuel Issacharoff Faculty Profile*, NEW YORK UNIV. SCH. OF LAW, https://its.law.nyu.edu/facultyprofiles/index.cfm?fuseaction=profile.biography&personid=23845 (last visited Oct. 7, 2021).

[15] *Compare* ECF 127-1 at ¶¶ 420-453 *with* ECF 25 at ¶¶ 101-113.

[16] *Compare* ECF 127-1 at ¶¶ 454; 463 *with* ECF 25 at ¶¶ 113-117.

[17] ECF 127-1 at ¶¶ 64-187.

[18] ECF 127-1 at ¶¶ 124-138, 184-185.

4

## IV. ARGUMENTS AND AUTHORITIES

### A.      Standard of Review.

Whether leave to amend should be granted is "'entrusted to the sound discretion of the district court[.]'"[19] Courts in the Fifth Circuit examine five factors in determining whether leave should be granted: undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies through previous amendments, undue prejudice to the opposing party, and futility of the amendment.[20] Not all factors need to be present in order to deny a motion for leave to amend.[21]  Generally speaking, an amendment is futile "if it would fail to survive a Rule 12(b)(6) motion."[22] When discovery is complete, courts have also analyzed futility based on whether the amended complaint can withstand a motion for summary judgment.[23]

### B.      Mullenix's Retaliation Claims Would Not Survive a Motion to Dismiss.

Claims of retaliation under Title VII and the EPA are evaluated under the same framework.[24] To state a claim for retaliation under these statutes, Mullenix must plausibly plead that: (1) she engaged in a protected activity; (2) that an adverse employment action occurred; and (3) that a causal link exists

---

[19] *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004) (quoting *Quintanilla v. Tex. Television, Inc.*, 139 F.3d 494, 499 (5th Cir. 1999)).

[20] *Id.* (citing *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003)).

[21] *See id.* (affirming denial of motion for leave to amend based only on undue delay and prejudice to the opposing party); *The Bar Grp., L.L.C. v. Business Intelligence Advisors, Inc.*, 215 F. Supp. 3d 524, (S.D. Tex. 2017) (denying motion for leave to amend on futility and undue delay grounds where proposed amendment did not provide sufficient jurisdictional facts).

[22] *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014); *see also DeLoach v. Woodley*, 405 F.2d 496, 496 (5th Cir. 1968) (per curiam) (citing *Foman v. Davis*, 371 U.S. 178 (1962)).

[23] *Adams Family Trust v. John Hancock Life Ins. Co.*, U.S.A. 424 F. App'x 377, 381-82 (5th Cir. 2011) (affirming district court's denial of leave to amend based on futility, because "[h]aving an amended complaint on file would not have enabled the Trust to defeat John Hancock's motion for summary judgment."); *Cooksey v. City of Gautier*, No. 1:16-CV-448, 2018 WL 3977880, at *8 (S.D. Miss., Aug. 20, 2018) ("[D]istrict courts in the Fifth Circuit have denied motions to amend as futile when the amended pleading could not survive summary judgment.").

[24] *Lindsley v. TRT Holdings, Inc.*, 984 F.3d 460, 470 (5th Cir. 2021) ("We analyze retaliation claims under Title VII, the Texas Labor Code, and the FMLA pursuant to the *McDonnell Douglas* burden-shifting framework, and we are offered no reason why we should not do the same under the Equal Pay Act.").

between the protected activity and the adverse employment action.[25] For an employer's act to qualify as a materially adverse action, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."[26]

In previously dismissing Mullenix's claims of retaliation under Title VII and the EPA, the Court correctly determined that Mullenix's allegations do not support the plausible inference of a causal connection between Mullenix's alleged protected activity, and the alleged adverse employment action.[27] This reasoning was based on two points: first, that "the timing is not close enough to permit a plausible inference that Mullenix's low compensation was causally connected to her previous reporting of equal-pay violations at the law school,"[28] and second, that "Mullenix's pleading alleges a list of retaliatory acts without any connective facts to assert a plausible causal connection."[29] Nothing in Mullenix's SAC would require the Court to depart from these prior holdings, as the SAC does not contain additional information that demonstrates causation, or that would allow the Court to plausibly infer that a causal link exists.

     1.    *Many of Mullenix's alleged adverse employment actions occurred prior to her claimed protected activity and are time-barred.*

While Mullenix mentions prior objections to allegedly unfair pay practices,[30] Mullenix's SAC relies primarily on the following alleged protected activity as the basis for retaliation regarding more

---

[25] *Id.* at 469 (applying same prima facie standard to Title VII and EPA retaliation claims).

[26] *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal citations and quotations omitted).

[27] ECF 61 at 5, ECF 90 at 3. Notably, the majority of arguments that Plaintiff advances in her Motion are identical to those that the Court has previously rejected. *Compare* ECF 127 at 4 ("*Starnes* is not an anomaly. . .") and ("Retaliation can be shown by. . .") *with* ECF 38 at 10 (same).

[28] ECF 90 at 3; *see also* ECF 61 at 5 ("Because an approximately 20-month gap exists between Mullenix's protected activity and the alleged adverse compensation, the timing alone cannot permit a plausible inference of a causal connection.").

[29] ECF 90 at 4; *see also* ECF 61 at 6-7.

[30] ECF 127-1 at ¶ 422.

recent alleged adverse actions: (i) her 2010 pay claim and settlement; (ii) her September 20, 2018 meeting with Dean Farnsworth; and (iii) the filing of her EEOC Charge on March 7, 2019.[31] Yet Mullenix's SAC also lists several events which she describes as retaliatory, but that took place long before the relevant alleged protected activity.[32] For example, among her allegations of retaliation, Mullenix includes: (i) the alleged withdrawal of the Associate Dean position in 1994 by former Dean Mark Yudof;[33] (ii) the purported "kill letter" sent by former Law School Professor Sam Issacharoff to the University of Michigan in 1996;[34] and (iii) alleged sabotaging of Mullenix's applications to be dean at other law schools by former UT Law Professor Dan Rodriguez, which allegedly occurred between 2000 and 2010.[35] All of these alleged actions occurred more than a decade ago, were allegedly committed by individuals who have long since left UT Austin, have nothing to do with her stated protected activity beginning in 2010, are barred by Mullenix's 2016 release,[36] are well outside the statute of limitations for retaliation claims under the EPA and Title VII, and certainly did not occur within 300 days of her EEOC charge.[37]

---

[31] ECF 127-1 at ¶ 454-463, 476, 479. *See also* Doc 127 at 4 ("[B]etween the December 2016 settlement agreement and the August 2018 $1500 pay raise . . . "). In her motion for leave to amend, Mullenix claims that her 2016 settlement of her tax liability related to the 2010 settlement was protected activity. However, "[p]rotected activity is defined as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII." *Ackel v. Nat'l Comms., Inc.*, 339 F.3d 376, 385 (5th Cir. 2003) (quotations omitted). Resolving tax liability claims related to a prior settlement does not equate to protected activity under Title VII or the EPA. Even if her 2016 Agreement were considered, it would make no difference, as the period is too great between the 2016 Agreement and purported adverse actions.
[32] ECF 127-1 at ¶¶ 427-435 (alleging retaliatory conduct from the fall of 1995); ¶¶ 279-284 (alleging retaliation in the form of housing allowances, beginning in 1987); ¶ 463 (bulleted list describing allegedly retaliatory committee appointments beginning in 2012).
[33] ECF 127-1 at ¶ 463.
[34] ECF 127-1 at ¶ 430.
[35] ECF 127-1 at ¶¶ 443-445.
[36] ECF 129-1 at Ex. D, APP. 17–26 (2016 Agreement).
[37] *Heath v. Bd. Of Supervisors for the S. Univ. & Agric. & Mech. College*, 850 F.3d 731, 741-42 (5th Cir. 2017) ("[T]he earliest discrete acts of retaliation on which Heath can rely must have occurred within the 300 days before she complained to the EEOC.") (internal citations omitted); *Ballard v. Tex. Dep't of Hous. & Cmty. Affairs*, No. 05-CV-311, 2007 WL 9701259, at *4 (W.D. Tex. Oct. 22, 2007) ("Ballard

       2.     *Mullenix's more recent alleged adverse employment actions are not materially adverse.*

For Title VII and EPA retaliation claims, an "'[a]dverse employment action' is a materially adverse action that 'might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'"[38] As the Supreme Court recognized, a plaintiff's protected activity cannot immunize her "from those petty slights or minor annoyances that often take place at work and that all employees experience."[39] The Fifth Circuit looks to allegations of "physical, emotional, or economic burdens borne by the plaintiff" as a result of the adverse action to meet the materiality standard.[40] In addition, conduct by other employees, whom the plaintiff knows have no final decision-making authority, do not constitute materially adverse actions.[41] Accordingly, the following purported adverse actions have been found insufficient to allege a retaliation claim: a shift change;[42] denial of a reassignment to a lateral position;[43] exclusion from meetings;[44] denial of requests to attend conferences;[45] and failure to receive public recognition for exceptional work or be nominated for awards.[46]

Here, Mullenix alleges the following actions were retaliatory: (i) her exclusion from the Budget Committee since 2012, and exclusion from ad-hoc committees; (ii) her assignment to "do-nothing" committees since 2012; (iii) not being awarded the Massey Teaching prize; (iv) Dean Farnsworth's

---

can only complain of Title VII violations occurring within 300 days of July 15, 2004, or occurring after September 19, 2003.").

[38] *Lindsley*, 984 F.3d at 470 (*quoting Burlington N.*, 548 U.S. at 68).

[39] *Burlington N.*, 548 U.S. at 68.

[40] *Cabral v. Brennan*, 853 F.3d 763, 767 (5th Cir. 2017).

[41] *Brandon v. Sage Corp.*, 808 F.3d 266, 271 (5th Cir. 2015) (finding that the plaintiff "would not have been dissuaded from engaging in protected activity as a result of threats or actions by someone outside her chain of command and who she knew had no final decision-making authority.").

[42] *Lushute v. Louisiana, Dep't of Soc. Servs.*, 479 F. App'x 553, 555 (5th Cir. 2012) (shift change was not an adverse employment action when plaintiff was changed from a four-day week to a five-day week with no change in total hours or compensation).

[43] *Jenkins v. City of San Antonio Fire Dept.*, 784 F.3d 263, 269 (5th Cir. 2015).

[44] *Guerrero v. FedEx Freight, Inc.*, 2013 WL 5563699 at *5 (S.D. Tex. Oct. 8, 2013).

[45] *Corley v. Louisiana*, 816 F.Supp.2d 297, 323 (M.D. La. 2011).

[46] *Bridgeforth v. Salazar*, 831 F.Supp.2d 132, 142-143 (D.D.C. 2011).

decision not to nominate Mullenix for the University of Texas Academy of Distinguished Teachers; (v) lack of publication of her accomplishments on the Law School website; and (vi) Professor Forbath's decision not to invite her a speaker at a conference.[47]  However, none of these actions constitute "materially adverse actions" necessary to support a retaliation claim.

As to committee assignments, federal courts across the country have held that exclusion from faculty committees does not constitute a materially adverse action.[48] As to her assignment to "do-nothing" committees, Mullenix admits that generally, no work was required of her,[49] and being asked to do no additional work does not rise to the level of a materially adverse action. Likewise, Mullenix's allegation that she was not invited by Professor Forbath to "participate in the Supreme Court Review panel," and was "excluded from specific aspects of institutional life, including her accomplishments being featured on the law school web page" fall far short of a materially adverse action.[50] Mullenix has not alleged that this conduct was by employees with authority over her employment,[51] much less that these purported retaliatory actions caused any material impact on her compensation, or any other

---

[47] ECF 127-1 at ¶ 463.

[48] *See, e.g., Edmonson v. Bd. of Trs.*, 258 F. App'x 250, 254 (11th Cir. 2007) (professor's "removal from committee positions - does not qualify as an adverse employment action because a reasonable employee would not have found this to be materially adverse."); *Aquilino v. Univ. of Kan.*, 268 F.3d 930, 934 (10th Cir. 2001) (professor's removal from a dissertation committee was not an adverse action); *Demuren v. Old Dominion Univ.*, 33 F. Supp. 2d 469, 483-84 (E.D. Va. 1999), *aff'd*, 188 F.3d 501 (4th Cir. 1999) (professor's exclusion from Dean Search Committee and failure to receive a university award do not qualify as adverse employment actions); *Whaley v. City Univ. of N.Y.*, 555 F. Supp. 2d 381, 399 (S.D.N.Y. 2008) (professor's failure to be appointed to the Health Policy Search Committee is not an adverse employment action); *Whittington v. Trustees of Purdue Univ.*, No. 2:09-CV-9, 2012 WL 685502, at *9 (N.D. Ind. Mar. 2, 2012) (removal from university committees is not an adverse employment action, where "[p]rofessors do not have a right to serve on a committee," and where professor was not previously a member of them, so no change in employment status resulted).

[49] *See generally* ECF 127-1 at ¶ 463 (describing various committees to which Plaintiff was appointed, and alleging that these committees "never convened," that "no work was completed or assigned.").

[50] ECF 127-7 at ¶ 463.

[51] *See Sage Corp.*, 808 F.3d at 271 (finding that the plaintiff "would not have been dissuaded from engaging in protected activity as a result of threats or actions by someone outside her chain of command and who she knew had no final decision-making authority.").

condition of employment. The Fifth Circuit has declined to find an adverse employment action on that very basis.[52]

Similarly, Mullenix alleges that she has refused to be considered for the Massey Teaching award, but she does not allege Dean Farnsworth controls who gets the award .[53] Similarly, while she alleges Dean Farnsworth has declined to nominate her for The University of Texas Academy of Distinguished Teachers, she does not allege that Dean Farnsworth has control over who actually is receives that honor (which he doesn't), or that a nomination would necessarily result in an award or any related additional compensation (as shown by her two failed prior nominations).[54]

In addition, Mullenix claims that Dean Farnsworth's offer to Mullenix of a retirement package on October 12, 2018, similar to those offered to other faculty members, was a retaliatory adverse employment action and constitutes "direct evidence of retaliation."[55] Setting aside (for now) the falsity of these allegations, early retirement offers only constitute an adverse employment action in the limited circumstances where the terms of the offer "would make the employee worse off whether the offer was accepted or not."[56] Plaintiff has alleged no facts indicating that this purported offer of retirement was a materially adverse action, as Mullenix obviously was not forced to retire and continues

---

[52] *See, e.g.*, *Thomas v. Kent,* 401 F. App'x 864, 866 (5th Cir. 2010) (no adverse action where "the grievance had no adverse effect on Thomas. It did not go in her personnel file or otherwise have any adverse effect on her employment.") (internal citations and quotations omitted); *Goring v. Board of Sup'rs of Louisiana State Univ. Agr. & Mechanical College,* 414 F. App'x 630, 633 (5th Cir. 2011) (no adverse employment action where there was no evidence that a post-tenure review of the professor resulted in any alteration in the terms and conditions of her employment"); *see also Higbie v. Kerry*, 605 F. App'x 304, 310-11 (5th Cir. 2015) (holding that "the mere fact" that an otherwise adverse action happened did not create a fact issue for an actionable claim because the plaintiff did not demonstrate that the adverse action actually impacted the plaintiff's day-to-day duties).
[53] ECF 127-1 at ¶ 463 at p.101. In fact, Dean Farnsworth is not in sole control of the award, but rather is a committee with alumni that determines recipients. Moreover, Dean Farnsworth defers to others on the faculty as to who is deserving of the award. Ex. H, Farnsworth Decl. ¶ 10.
[54] ECF 127-1 at ¶ 463 at p.101-102; *see also* Ex. H, Farnsworth Decl. ¶ 11.
[55] ECF 127-1 at ¶¶ 454-460.
[56] *Barrow v. City of New Orleans S.S. Ass'n*, 10 F.3d 292, 297 (5th Cir. 1994).

10

to work at the Law School. The evidence regarding the retirement package will be addressed in more detail below under the Rule 56 standard.

As to Mullenix's allegation that she was blocked from serving as Associate Dean for Research, Mullenix does not allege that the position has been open during Dean Farnsworth or that Dean Farnsworth has appointed anyone in her stead, which he has not. Indeed, Professor Forbath has served as Associate Dean for Research since 2009.[57] It is axiomatic that neither Title VII nor the EPA requires an employer to remove one employee from their currently-held position, solely to accommodate another employee, and this is therefore not a materially adverse action.[58] In short, Mullenix cannot establish that any of this conduct was materially adverse, particularly as she was clearly not dissuaded from filing an administrative charge.[59]

3.     *Mullenix has not alleged any causal link to support her retaliation claim.*

Even if these actions could form the basis of a prima facie claim, there is no information in Mullenix's SAC that provides a "chronology of events from which retaliation may be plausibly

---

[57] *See Law School faculty head south to strengthen scholarly bonds with ITAM colleagues*, THE UNIV. OF TEX. SCH. OF LAW, https://law.utexas.edu/news/2012/10/31/law-school-faculty-head-south-to-strengthen-scholarly-bonds-with-itam-colleagues/ (last visited Oct 7, 2021) (identifying professor Forbath as Associate Dean for Research as of October 31, 2012); Dean and Leadership, THE UNIV. OF TEX. SCH. OF LAW, https://law.utexas.edu/about/area/dean-and-leadership/ (last visited Oct. 7, 2021) (identifying Professor Forbath as the current Associate Dean for Research). As with the above-cited webpages (*supra* notes 14, 16), these webpages are public record, and UT Austin requests that the Court take judicial notice of them; *see also* Ex. H, Farnsworth Decl. ¶ 11; Ex. F, Mullenix 001642-001654 (Forbath CV).

[58] *See Adams v. Groesbeck Indep. Sch. Dist.*, 475 F.3d 688, 691 (5th Cir. 2007) ("An employer does not discriminate or retaliate illegally if it has no job opening."); *Mylett v. City of Corpus Christi*, 97 F. App'x. 473, 476 (5th Cir. 2004) ("If a position is not available, an employee has no actionable claim for not being promoted."); *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 325 (5th Cir. 2002) ("The nonexistence of an available position is a legitimate reason not to promote.").

[59] *See DeHart v. Baker Hues Oilfield Operations*, 214 F. App'x. 437, 442 (5th Cir. 2007) (acts were not an adverse employment action where they "did not in fact dissuade a charge of discrimination."); *Jones v. Jefferson Par.*, No. CIV.A. 12-2191, 2013 WL 6072719, at *14 (E.D. La. Nov. 18, 2013) (alleged retaliatory actions were not materially adverse where plaintiff actually filed an EEOC charge and suffered no loss of pay, rank, or other duties).

inferred."[60] As for establishing an inference of causation based on temporal proximity, "[i]t is not the case that temporal proximity, even a very close one, establishes causation as a rule."[61] The cases that accept temporal proximity as sufficient basis for causation almost uniformly hold that the temporal proximity must be separated by mere weeks, as opposed to months or years.[62] Furthermore, the Fifth Circuit has made it clear that temporal proximity is calculated from the *first* known protected act, not the last known protected act.[63] As the Fifth Circuit explained: "a Title VII claimant cannot, with each protected activity, re-start 'the temporal-proximity clock.'"[64]

Here, Mullenix's has alleged that she has been making pay disparity complaints for over thirty years to six deans, starting with Dean Mark Yudof (who stepped down as Dean in 1994).[65] Under Mullenix's retaliation theory, she has been subject to decades of retaliation since that time. However, the Fifth Circuit precludes plaintiffs from restarting the temporal clock based on proximity of later protected activity to alleged adverse actions. Even if Mullenix could restart her temporal clock with more recent protected activity, Mullenix alleges that her 2010 Agreement was the event that led to Dean Farnsworth's purported retaliatory animus toward her.[66] Under this theory, temporal proximity

---

[60] ECF 61 at 5; ECF 90 at 3.

[61] *Ladner v. Walmart, Inc.*, 834 Fed. Appx. 893, 897 (5th Cir. 2020).

[62] *See, e.g., Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 948 (5th Cir. 2015) (6.5 weeks sufficient); *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 306 (5th Cir. 2020) (one week sufficient evidence of causation in ADA retaliation case, which used same standard applied in Title VII and § 1981 cases); *but see Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (collecting cases wherein three-month and four-month gaps between protected activity and adverse employment actions were insufficient).

[63] *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 429 n.23 (5th Cir. 2017); *see also Perkins v. Child Care Assocs.*, 51 F. App'x 469, 474 (5th Cir. 2018); *Baldwin v. Holder*, No. CIV.A. H-09-842, 2011 WL 2078614, at *8 (S.D. Tex. May 26, 2011); *Hanks v. Shinseki*, No. 3:08-1594-G, 2010 WL 3000835, at *7–8 (N.D. Tex. July 28, 2010); *Hamilton v. Sikorsky Aircraft Corp.*, No. 9:17-CV-80289, 2018 WL 10704410, at *11 (S.D. Fla. Mar. 6, 2018), *aff'd*, 760 F. App'x 872 (11th Cir. 2019).

[64] *Alkhawaldeh*, 851 F.3d at 429 n.23.

[65] ECF 127-1 at ¶ 422.

[66] ECF 127-1 at ¶ 462. UT Austin notes that despite Mullenix's allegations, the settlement actually occurred in December 2010. *See* ECF 129-1 at Ex. B, APP. 6-14 (2010 Agreement).

would be measured relative to her 2010 Agreement, and any allegations of protected activity that occurred at a later date are irrelevant for establishing temporal proximity. More than seven years passed between the 2010 Agreement and her August 2018 raise, which is clearly insufficient for any inference of causation.[67]

Here, Mullenix also claims she has continually been denied the Associate Dean position since 1994, including as recently as May 2019,[68] and that since joining the Law School in 2012, Dean Farnsworth has continually declined to appoint her to the Budget Committee, continually declined to nominate her for teaching awards, and continually appointed her "do-nothing" committees.[69] However, there are no allegations creating a plausible connection between these decisions and any protected conduct. Rather, the allegation of consistent conduct over a long period of time is fundamentally inconsistent with the notion that a particular decision was made in retaliation for specific protected activity by Mullenix based on their temporal proximity.[70]

Indeed, most of Mullenix's alleged adverse actions have no temporal connection whatsoever to any protected activity. For instance, the alleged lowering by Dean Farnsworth of her recommended pay raise from $4,000 to $1,500 in May 2018 occurred over seven years *after* her 2010 Agreement and four months *before* her September 2018 meeting with the Dean (about that very raise).[71] It is difficult

---

[67] The same conclusion would be reached, even if Mullenix's 2016 Agreement were considered protected activity, as more than 20 months elapsed between the 2016 Agreement and her 2018 pay rise decision. *See* Doc 127 at 4 ("[B]etween the December 2016 settlement agreement and the August 2018 $1500 pay raise . . . ").

[68] ECF 127-1 at 463.

[69] ECF 127-1 at 463.

[70] *See Montgomery-Smith v. George*, 810 F. App'x. 252, 261 (5th Cir. 2020) ("Actions taken over a long period of time may ultimately, in the aggregate, constitute racial discrimination. That is not the case with a discrete act of retaliation. Smith cannot use a statement made in 2007 to create a fact question as to whether a failure to promote her years later was retaliatory."); *Hamic v. Harris County W.C. & I.D. No. 36*, 184 F. App'x 442, 447 (5th Cir. 2006) (finding that "retaliation is, by definition, a discrete act, not a pattern of behavior.")

[71] ECF 127-1 at 188-190, 454, 463 at p. 105.

13

to fathom how her complaint in September could have caused a pay reduction the prior May that she was complaining about.[72] In any event, Mullenix has failed to show the very close proximity between her relevant protected activity in 2010, and any alleged adverse action. The rare exceptions to this rule proposed by Mullenix in her Motion do not apply to this case.[73]

Because Mullenix's re-asserted claims would fail to survive (another) motion to dismiss, Plaintiff's Motion should be denied as futile.[74]

## C.    Mullenix's Re-Asserted Retaliation Claims Cannot Survive Summary Judgment.

Even if Mullenix could cherry-pick a particular act of protected activity and align it temporally with a specific adverse action to try to infer causation, the only purported retaliatory acts that could come close to giving rise to an inference of causation under that strained logic would be: (1) the alleged offer of early retirement by Dean Farnsworth in October 2018 following their September 20, 2018

---

[72] *See Davis v. Dallas Indep. Sch. Dist.*, 448 F. App'x 485, 494 (5th Cir. 2011) ("Because the protected activity occurred after the adverse employment action at issue, Davis cannot demonstrate causation.").

[73] Mullenix's Motion again invites the Court to apply the rare exceptions to this rule, something the Court has twice declined to do, in light of identical arguments from Plaintiff. *Compare* ECF 127 at 3-4 (citing *Starnes v. Wallace*, *Gee v. Principi*, *Shirley v. Chrysler First, Inc.*, *Zamora v. City of Houston* as the "established standard") with ECF 38 at 14-15 (citing the same cases as the "established standard.") and ECF 73 at 20-21 (citing the same cases as the "established standard.")). These cases are inapplicable here. For example, in *Starnes*, the Court found that the intervening action, actual payment of a settlement of a wage dispute in direct response to plaintiff's protected activity, can form the basis of a temporal proximity argument. *Starnes v. Wallace*, 849 F.3d 627, 631, 635 (5th Cir. 2017) (plaintiff's employer "settled its dispute" about wages by paying an employee $40,000).

[74] Mullenix's Motion also argues that causation is established by "allegations indicating a departure from policies and procedures and by facts showing that the employment record does not support the adverse action," stating that "UT Law claims to make salary and raise decisions based on three factors: scholarship, teaching, and service," that "those factors have not been consistently applied to Professor Mullenix." ECF 127 at 7. Yet Mullenix's arguments boil down to little more than a disagreement as to whether the Budget Committee's assessments were accurate—something courts have repeatedly rejected as evidence of retaliation. *See, e.g., Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 899 (5th Cir. 2002) ("Merely disputing [the employer's] assessment of [the employee's] performance will not create an issue of fact."); *Mato v. Baldauf*, 267 F.3d 444, 452 (5th Cir. 2001) ("[W]e have repeatedly and emphatically stated that anti-discrimination laws 'are not vehicles for judicial second-guessing of business decisions.'") (quoting *Deines v. Tex. Dep't of Protective & Reg. Servs.*, 164 F.3d 277, 281 (5th Cir. 1999)).

14

meeting; and (2) the purported lowering of Mullenix's pay raise by $500 in May 2019, following the submission of her EEOC charge in March 2019. However, as the evidence makes clear, these claims (like all other claims of retaliation raised by Mullenix) would still be futile under the well-settled Rule 56 burden-shifting standard for retaliation claims on summary judgment.[75] The same non-discriminatory reasons for Mullenix's pay set forth in UT Austin's motion for summary judgment[76] would also apply as legitimate, non-retaliatory reasons. Moreover, additional evidence shows Mullenix's retaliation claims could not survive summary judgment.

        1.     *Mullenix asked Dean Farnsworth to offer her a retirement package.*

The evidence in this case leaves no doubt that Dean Farnsworth's offer of a retirement package to Mullenix was not a retaliatory act. In addition to not meeting the materiality requirement, Dean Farnsworth made a phased retirement offer to Mullenix only after she expressly asked him to do so. Specifically, on September 20, 2018, Mullenix confronted Dean Farnsworth directly about her 2018 raise, and the meeting was recorded at her request.[77] During their meeting, Mullenix (1) complained about her recent raise and lamented that three female professors—Lynn Baker, Mechele Dickerson, and Wendy Wagner—now earned more than her; (2) asked Dean Farnsworth to ensure

---

[75] If Mullenix establishes a *prima facie* case on summary judgment, then "the burden shifts to the defendant to demonstrate a legitimate, non-retaliatory reason for the employment action." *Lindsley,* 984 F.3d at 470. This burden is light, and is satisfied if UT Austin "articulates any legitimate reason for the adverse action." *Armstrong v. Marathon Petro. Co.*, No. 3-16-CV-00115, 2018 WL 2976732, at *8 (S.D. Tex. May 1, 2018). The burden then shifts back to Mullenix to "demonstrate that the employer's stated reason is actually a pretext for retaliation." *Alkhawaldeh*, 851 F.3d at 427 (internal alterations omitted). Unlike claims of discrimination however, Mullenix must produce evidence demonstrative that "the adverse employment action would not have occurred 'but for' the employee's decision to engage in [protected activity]." *Id.* (*quoting Feist v. La., Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013)).

[76] ECF 129.

[77] Ex. H, Farnsworth Decl. ¶ 6; Ex. A, Transcript of 09.20.2018 Mullenix-Farnsworth Meeting at 2:1–5. Note that while Plaintiff's live Complaint (and her SAC) describe this meeting and the following meeting, see ECF 127-1 at ¶ 454, facts established by a recording of an event control where "they clearly contradict the facts contained in a pleading." *Kokesh v. Curlee*, --- F.4th. ---, 2021 WL 4269568, at *1 n. 2 (5th Cir. Sept. 21, 2021).

she was the highest paid female faculty member; and (3) requested that Dean Farnsworth propose a resolution or "package" similar to phased retirement packages provided to other faculty members.[78] When Dean Farnsworth specifically asked to confirm whether she wanted a phased retirement (like others had received) as part of the package, Mullenix confirmed, "yes, I am open to that being part of the package."[79] She further informed the Dean that she was "basically dying" due to a medical condition and had been discussing retirement with colleagues.[80] They agreed to meet again and that Mullenix would consider what Dean Farnsworth "would put on the table."[81] When read in totality, the transcript of the meeting is clear that Mullenix asked Dean Farnsworth to put together a "package" that would include a phased retirement similar to what had been offered to other faculty members.

On October 12, 2018, Dean Farnsworth met again with Mullenix and, according to Mullenix's own notes, offered her a 2-year phased retirement package.[82] In response, she told him that the two-year period was not long enough, and he said he would get back to her.[83] A week later, they met again, and Dean Farnsworth offered a three year phased-retirement package with additional monetary consideration, which Mullenix rejected.[84]

---

[78] *See* Ex. A, Transcript of 09.18.2021 at 12:8–14:2, 38:12–39:4, 39:11–19, 32:3–13.

[79] *Id.* at 32:3–33:12.

[80] *Id.* at 43:6–45:15.

[81] *Id.* at 45:10-15.

[82] Ex. E, Mullenix 002995.

[83] *Id.*; Ex. H, Farnsworth Decl. ¶ 9.

[84] Ex. E, Mullenix 002996; Ex. H, Farnsworth Decl. ¶ 9. After rejecting the Dean's offer, Mullenix then went to each Budget Committee member to justify their evaluation and her raise. For instance, according to Mullenix's notes, Professor Littwin informed Mullenix that her lack of collegiality contributed to her evaluation. Littwin specifically cited a letter Mullenix drafted denigrating her female colleague, Mechele Dickerson, after Mullenix learned that UT Law nominated Dickerson for UT Austin's Academy of Distinguished Teachers—an award Mullenix had been nominated for twice before but did not receive. *See* Ex, J, Chesney Dep. 209:16-212:21, 216:10-218:11, Ex. 11; Ex. K, Goode Dep. 108:2-110:23. In the 2014 letter, Mullenix spends nearly a page disparaging Dickerson's teaching and scholarly contributions in an attempt to uplift her own. Mullenix also saw fit to send copies of the letter to various notable members of the legal community, including UT Austin President Bill Powers, the Honorable Nancy Atlas, the Honorable Lee Rosenthal, the Honorable Diane Wood,

When Mullenix filed her EEOC Charge, she swore (under oath and as an officer of the court) that Dean Farnsworth's offer of a phased retirement package, which she had asked for, constituted "direct evidence of retaliation because Professor Mullenix is a tenured faculty member who cannot be forced to retire."[85] In her pleadings in this lawsuit, which are subject to the requirements of Rule 11 of the Federal Rules of Civil Procedure, Mullenix continued to accuse Dean Farnsworth of engaging in unlawful retaliation by offering her a phased retirement package as she requested.[86] No reasonable person would find this to be a materially adverse action reflecting retaliatory animus or capable of proving "but-for" causation.[87]

2.    *Dean Farnsworth's proposed raises for Mullenix and many other faculty members were reduced following consultation with the Budget Committee.*

Mullenix further alleges that she "received low raises in retaliation for challenging the inequitable compensation system at the law school," and that after she filed her EEOC Charge on March 7, 2019, UT Austin "increased the salary disparity between [her] and the male senior cohort in order to retaliate against her."[88] In particular, Mullenix alleges that Dean Farnsworth reduced her proposed raise in 2018 from $4,000 to $1,500 and in 2019 from $7,000 to $6,500.[89] As an initial matter, Mullenix cannot allege a prima facie retaliation claim with respect to the 2018 pay raise, as allegations

---

[85] Ex. G, Mullenix EEOC Charge.

Scott Atlas, and Harry Reasoner, as well as Dickerson herself. Ex. D, D-0039896 (Mullenix Letter on Dickerson's Nomination).

[85] Ex. G, Mullenix EEOC Charge.

[86] ECF 25 at ¶¶ 114-115; ECF 127-1 at  ¶¶ 455.

[87] *See, e.g., Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 571 (2nd Cir. 2011) (a transfer of shifts was not materially adverse under Title VII where the employee himself requested it); *Krause v. City of La Crosse*, 246 F.3d 995, 1001 (7th Cir. 2001) (even where employer may have considered action to be punishment, the fact that the employee requested it "renders her claim that it was an adverse employment action meritless."); *Barrow*, 10 F.3d at 297 (offers of early retirement are not an adverse employment action, unless they "would make the employee worse off whether the offer was accepted or not.").

[88] ECF 127-1 at ¶¶ 500-501.

[89] ECF 127-1 at ¶ 463 p. 105.

of pay disparity standing alone, even if true, are insufficient to show causation[90] and there is no temporal proximity to any protected activity. Moreover, there is a legitimate, non-retaliatory explanation for the 2018 and 2019 reductions—namely, the Budget Committee process resulted in changes to many faculty members' proposed pay raises, not just Mullenix.

While Mullenix alleges that the Budget Committee recommended a $3,000 raise and Dean Farnsworth reduced it to $1,500, the evidence shows the exact opposite. After receiving evaluations from the Budget Committee in 2018, which rated Mullenix as "below baseline," Dean Farnsworth recommended that Mullenix receive a $3,000 raise (which was below the default $4,000 proposed raise for those rated "baseline").[91] However, after meeting with the Budget Committee to discuss the proposed raises (as was his usual practice), the raises for Mullenix's and *ten other faculty members* were all reduced by amounts ranging from $1,000 to $6,000.[92] There is simply no evidence that Mullenix was singled out for retaliatory treatment based on any protected activity.

Mullenix also alleges that a few months after filing her EEOC charge in March 2019, Dean Farnsworth reduced her raise proposed by the Budget Committee from $7,000 to $6,500, and she alleges this was done in retaliation for her protected activity.[93] In 2019, the Budget Committee provided their evaluations to Dean Farnsworth and rated Mullenix as "baseline." Per the usual process, Dean Farnsworth assigned proposed raise amounts to particularly faculty members, with a $7,000 proposed raise for Mullenix and five other male faculty members rated "baseline" with similar

---

[90] See *Thibodeaux-Woody v. Houston Cmty. College*, 593 F. App'x. 280, 285 (5th Cir. 2014) (holding that although "denial of a pay increase can be an adverse action," the plaintiff's claim nevertheless failed because she could not demonstrate a causal link between her protected activity and that conduct).

[91] Ex. H, Farnsworth Decl. ¶ 4.

[92] *Id.* at ¶ 4. Jinks ($6,000 reduction to $4,000), Johnson ($2,000 reduction to $0), Morse ($3,000 reduction to $12,000), Peroni ($1,000 reduction to $3,000), Perry ($1,000 reduction to $0), Powe ($1,000 reduction to $3,000), Sager ($1,000 reduction to $3,000), Smith $1,000 to $3,500), Vladek ($3,000 reduction to $12,000), Wasserman ($3,000 reduction to $12,000). *Compare* Ex. B, 2018 Proposed Raises, *with* ECF 129-1 at Ex. EE, APP. 446–503 (2018 Actual Raises).

[93] ECF 127-1 at ¶ 463 p. 105.

experience and pay rates, and Dean Farnsworth then presented these proposed raises to the Budget Committee for further consideration.[94] After this additional consultation with the Budget Committee, the raises for most faculty members not receiving FII awards was reduced by $500.[95] (The amount of FII raises was previously determined and not subject to change.) Accordingly, Mullenix and the six male faculty members rated "baseline" all had their proposed raises of $7,000 lowered to $6,500, and most other faculty also had their proposed raises reduced by $500.[96] These changes had nothing to do with Mullenix or any protected activity. Indeed, the law recognizes that any suggestion of retaliatory intent is defeated where others who did not engage in protected activity receive equal treatment.[97]

Additional evidence reveals how untethered from reality Mullenix's retaliation claims truly are. Mullenix claims that her committee assignments were retaliatory.[98] Every year, Associate Dean Chesney requests that Law School faculty members request committee assignments, and every year since 2016 Mullenix has requested to be assigned to the Tenure Committee.[99] Aside from one year where she was assigned to the Teaching Committee, Associate Dean Chesney has accepted her requests and assigned her to the Tenure Committee.[100] While Mullenix claims people are motivated by retaliatory intent when they give her what she asks for, no reasonable person would agree.

---

[94] Ex. H, Farnsworth Decl. ¶ 5.

[95] *Id.* at ¶ 5; *Compare* Ex. C, 2019 Proposed Raises, *with* ECF 129-1 at Ex. GG, APP. 537–591 (2019 Actual Raises).

[96] Ex. H, Farnsworth Decl. ¶ 5.

[97] *See Simmonds v. Nat'l Oilwell Varco,* Civ. A. No. 12-2109, 2013 WL 13140498, at *7 (S.D. Tex. Dec. 18, 2013) ("where a plaintiff is not singled out for adverse treatment and many employees are treated similarly, a plaintiff cannot establish a prima facie case of retaliation.") (citing *Bryant v. Citicorp Data Systems, Inc.,* 202 F.3d 266, 266 (5th Cir. 1999)).

[98] ECF 127-7 at ¶ 463.

[99] Ex. I, Mullenix Dep. Ex. 3-6 (Committee Assignment Emails).

[100] Ex. I, Mullenix Dep. Ex. 2; ECF 129-1 at Ex. J, APP. 146–151 (2020-2021 Committee Assignments); Ex. I, Mullenix Dep. 54:12-55:19, 67:22-69:18 (showing Mullenix admitting she served on the Tenure Committee even in years she does not appear on the list).

**D.     The Remaining Allegations in Mullenix's Second Amended Complaint.**

Mullenix's SAC also includes a host of other allegations regarding decades-old events at the Law School, the Budget Committee process, the Budget Committee's evaluation of her and her purported comparators, and other matters irrelevant to her retaliation claims. Inclusion of this information does not warrant granting Mullenix leave to amend her Complaint, particularly at this late stage, where discovery has long-since been closed, and motions for summary judgment have been filed.[101] Instead, courts have repeatedly denied leave to file an amended complaint to provide additional facts uncovered during the discovery process, particularly after both the close of discovery and filing of dispositive motions.[102] Similarly, there is no point in allowing Mullenix to file a voluminous pleading that will only create an unwarranted burden on UT Austin to file a corresponding voluminous response, further burdening this Court's resources.

## V.  CONCLUSION

Mullenix's claims of retaliation has been dismissed twice by the Court. Neither Mullenix's Motion, her SAC, nor the evidence in this case demonstrates that these claims would survive a motion to dismiss, much less a motion for summary judgment. Mullenix's retaliation claims are futile, and the remaining hundred-plus pages of allegations do not affect the litigation of the remaining claims in this case. Accordingly, the Court should deny Mullenix's Motion.

---

[101] ECF 129 (Defendant's Motion for Summary Judgment); ECF 131 (Plaintiff's Partial Motion for Summary Judgment).

[102] *See, e.g.*, *Allen v. Indep. Sch. Dist.*, 689 F. App'x. 238, 242 (5th Cir. 2017) (affirming denial of leave to amend where the district court "properly considered" the close of discovery as a factor in weighing against the plaintiff's motion."); *Overseas Inns S.A. P.A. v. United States*, 911 F.2d 1146, 1151 (5th Cir. 1990) ("the government has already filed a summary judgment motion based on the current pleadings. To grant Overseas leave to amend is potentially to undermine the government's right to prevail on a motion that necessarily was prepared without reference to an unanticipated amended complaint."); *George v. Harris Cty.*, No. H-10-3235, 2012 WL 2744332, at *4 (S.D. Tex. July 9, 2012) (denying leave to amend where "[d]iscovery had already closed when George moved for leave to amend and the dispositive motions deadline was imminent.").

Dated: October 8, 2021                              Respectfully submitted,


                                                   */s/ Darren Gibson*
                                                   Darren Gibson
                                                   Texas State Bar No.  24068846
                                                   Kelli Fuqua
                                                   Texas State Bar No. 24097713
                                                   Andrew R. Gray
                                                   Texas State Bar No. 24106023

                                                   LITTLER MENDELSON, P.C.
                                                   A Professional Corporation
                                                   100 Congress Avenue, Suite 1400
                                                   Austin, Texas  78701
                                                   512.982.7250
                                                   512.982.7248 (Fax)
                                                   dgibson@littler.com
                                                   kfuqua@littler.com
                                                   argray@littler.com

                                                   **ATTORNEYS FOR DEFENDANT**


## CERTIFICATE OF SERVICE

On the 8th day of October 2021, I electronically submitted the foregoing document with the Clerk of the Court using the Electronic Case Filing system of the Court. I hereby certify that I have served all parties of record as follows:

Colin Wash                          Paige E. Melendez
Jairo Castellanos                   Texas Bar No. 24121731
Wiley Walsh, P.C.                   Rob Wiley, P.C.
1011 San Jacinto Blvd, Ste 401      2613 Thomas Ave.
Austin, Texas 78701                 Dallas, TX 75204
colin@wileywalsh.com                Telephone: (214) 528-6500
jairo@wileywalsh.com                Facsimile: (214) 528-6511
                                    pmelendez@robwiley.com


*Attorneys for Plaintiff*


                                                   */s/ Darren Gibson*
                                                   Darren Gibson

4834-5663-7693.9 / 092536-1003