# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| **LINDA SUSAN MULLENIX,** | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | |
| | § | **CIVIL NO. 1-19-CV-1203-LY** |
| | § | |
| **UNIVERSITY OF TEXAS AT AUSTIN,** | § | |
| *Defendant* | § | |
| | § | |

## O R D E R

Before the Court are Plaintiff's Motion for Leave to File Second Amended Complaint that Reasserts Retaliation Claims under Title VII and the Equal Pay Act, filed September 4, 2021 (Dkt. 127); Plaintiff's Comparison Document of the First Amended Complaint and Second Amended Complaint, filed November 8, 2021 (Dkt. 144-1); and the associated response and reply briefs. The Court heard oral argument on the motion on November 10, 2021.[1]

## I.   Background

Plaintiff Linda Susan Mullenix has been a tenured law professor at The University of Texas School of Law ("UT Law") since 1991. Plaintiff alleges that she discovered in 2010 that she was being paid less than comparable male faculty at UT Law. Plaintiff alleges that she settled an Equal Pay Act claim against UT Law in September 2011 in exchange for a $250,000 forgivable loan. Dkt. 25 ¶¶ 33-34. "Due to the illegal way UT Law structured the $250,000 payment," Plaintiff alleges, she had to pay tax penalties and accountant fees in 2014 or 2015. *Id.* ¶ 41. Plaintiff alleges

---

[1] The District Court referred all pending and future motions in this case to the undersigned Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

that in December 2016, UT Law agreed to pay her $16,000 to reimburse her for those fees and penalties, but required her to sign a "general release of all claims to date." *Id.* ¶ 42. Plaintiff signed the settlement agreement on December 19, 2016. *Id.* ¶ 43.

Since December 20, 2016, Plaintiff alleges, "the gender pay gap between Professor Mullenix and her male comparators has grown by thousands of dollars every year." *Id.* at 12. Plaintiff alleges that she is paid less than her male counterparts because of her sex. She further alleges that the "acts of unequal pay also constitute retaliation against Professor Mullenix for her prior equal pay act complaints and continue to the present." *Id.* ¶ 101.

On December 12, 2019, Plaintiff filed this suit against The University of Texas at Austin (the "University"), alleging sex discrimination and retaliation in violation of the Equal Pay Act and Title VII of the Civil Rights Act.[2] Title VII and the Equal Pay Act prohibit discrimination in employment, including in compensation, on the basis of sex. *Lindsley v. TRT Holdings, Inc.*, 984 F.3d 460, 466 (5th Cir. 2021).

**A. Dismissal of Title VII Retaliation Claim**

On February 14, 2020, the University filed a motion to dismiss Plaintiff's Title VII retaliation claim, arguing that Plaintiff failed to allege sufficient facts to demonstrate a plausible claim for relief. Dkt. 14. To state a plausible retaliation claim under either Title VII, a plaintiff must demonstrate that: (1) she engaged in protected activity; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action. *Lindsley*, 984 F.3d at 469.

The University moved for partial dismissal, arguing that Plaintiff failed to demonstrate a causal link between Plaintiff's protected activity in 2010 and 2016 and the adverse pay raises in 2018. In

---

[2] In her Original Complaint, Plaintiff also asserted a claim under the Texas Labor Code. Plaintiff dismissed that claim on February 26, 2020, under Federal Rule of Civil Procedure 41(a)(1)(A)(i). Dkt. 15.

support of a causal connection, Plaintiff relied on the following alleged retaliatory actions: (1) giving Plaintiff the lowest pay raise of any faulty member in 2017 and 2018; (2) not giving Plaintiff any teaching awards or prestigious committee assignments; (3) Dean Farnsworth's comments to Plaintiff in 2018 that "he will not pay her on par with [Professor] Bob Bone unless she retires in two years"; (4) Dean Farnsworth describing Plaintiff as "a difficult woman"; and (5) telling new faculty not to interact with Plaintiff. Dkt. 16 at 12.

The District Court found that these allegations were insufficient to show "a chronology of events from which retaliation may plausibly be inferred." Dkt. 18 at 4 (quoting *Brady v. Hous. ISD*, 113 F.3d 1419, 1424 (5th Cir. 1997)). The District Court reasoned: "Mullenix merely alleges a list of retaliatory acts without providing a date or any other connective facts. Mullenix's 'naked assertions devoid of further factual enhancement' lack any specificity to allege a plausible causal connection, rendering Mullenix's right to relief only speculative.'" Dkt. 18 at 4-5. The District Court also found that Plaintiff could not show causation by temporal proximity. Because the alleged adverse pay raises occurred "nearly two years" after Plaintiff's protected activity, the District Court concluded that "the timing is not close enough to permit a plausible inference that her low compensation was causally connected to her reporting of equal-pay violations at the law school." *Id.* at 4. Accordingly, the District Court dismissed Plaintiff's Title VII retaliation claim with prejudice.

## B.  Dismissal of Re-Urged Title VII Retaliation Claim

On December 4, 2020, Plaintiff filed her First Amended Complaint, in which she repleaded the Title VII retaliation claim with additional facts. Dkt. 25. The University filed a second motion to dismiss Plaintiff's reasserted retaliation claim under Title VII, as well as Plaintiff's retaliation claim under the Equal Pay Act. Dkt. 35.

The District Court granted the University's motion in part and denied it in part. Dkt. 61. The District Court dismissed Plaintiff's re-urged Title VII retaliation claim, finding that the First Amended Complaint "does not cure the two causation issues identified in its order on the first motion to dismiss." Dkt. 61 at 5. The District Court found that the "approximately 20-month gap" between Plaintiff's protected activity and the alleged adverse compensation was insufficient under Fifth Circuit precedent to show a causal connection between her protected activities and the alleged retaliatory acts. *Id.*

The District Court also found that the chronology of retaliatory events did not show causation. While the District Court acknowledged that a plaintiff may show causation by relying on "a chronology of events from which retaliation may plausibly be inferred," the Court found that Plaintiff's additional factual allegations in the First Amended Complaint did not support such a plausible inference. *Id.*

First, the District Court noted that many of the alleged retaliatory actions occurred prior to the protected activity. *Id.* at 6. Second, the Court found that the additional factual allegations, including time frames for the alleged retaliatory acts ranging from 2018 to 2020,[3] failed to "bridge the gap" between Plaintiff's protected activities and the alleged adverse actions. *Id.* The District Court found that Plaintiff's newly asserted allegations did "not allege sufficient 'connective facts' that relate the actions to the adverse compensation she received in August 2018 and August 2019." *Id.*

---

[3] The additional allegations included the following: (1) Dean Farnworth's October 12, 2018 statement that he would raise Plaintiff's salary if she retired in two years; (2) Plaintiff's unsuccessful requests in May 2018 and May 2019 to be appointed an Associate Dean for Research; (3) Dean Farnworth's decisions in August or September of each year to assign Plaintiff to "do-nothing committees"; (4) Dean Farnworth's decisions in 2017, 2018, 2019, and 2020 to appoint other professors to the committees that review first year law exams; (5) the University's annual decision to award the Massey Teaching Award to another professor and to induct other professors into the University of Texas Academy of Distinguished Teachers; (6) Plaintiff's accomplishments not being featured on the law school webpage; and (7) Professor Willy Forbath's decision to assign participation in the 2019 Supreme Court Review panel to someone else. Dkt. 61 at 6.

at 7. Thus, the District Court concluded that Plaintiff's First Amended Complaint "does not create a chronology of events from which retaliation may plausibly be inferred." *Id.* at 7. Accordingly, the District court again dismissed Plaintiff's Title VII retaliation claim with prejudice.

### C. Dismissal of Equal Pay Act Retaliation Claim

The District Court denied the motion to dismiss Plaintiff's Equal Pay Act retaliation claim, reasoning that the University was precluded under Rule 12(g)(2) from seeking dismissal of that claim under Rule 12(b)(6) because it had not expressly sought dismissal of the claim in its first motion to dismiss. *Id.* at 3-4. The Court noted that the University "may, however, pursue this argument through any of the avenues that Rule 12(h)(2)-(3) identifies." *Id.* at 4 n.1. The University then filed a motion for judgment on the pleadings pursuant to Rule 12(c), reasserting its argument that Plaintiff failed to state a plausible claim of retaliation under the Equal Pay Act. Dkt. 68. The District Court granted the motion and dismissed Plaintiff's Equal Pay Act retaliation claim with prejudice. Dkt. 90 at 5.

The District Court again found that the timing between Plaintiff's protected activity and her alleged low compensation was not close enough to show a plausible inference of retaliation. In addition, the District Court again found that "Mullenix's pleading alleges a list of retaliatory acts without any connective facts to assert a plausible causal connection." *Id.* at 4. The District Court further rejected Plaintiff's argument that "the University possessing knowledge of the protected activity is sufficient to establish causation and survive dismissal at this stage," reasoning:

> As the University points out in its reply, knowledge of the protected activity is required to survive dismissal, but it is not by itself sufficient to establish the causal element of a retaliation claim. To survive dismissal, Mullenix must plead facts that plausibly demonstrate the University's knowledge of her participation in the protected activity and plausibly support the University's alleged employment action as being at least partly based on this knowledge. As the court held when dismissing Mullenix's Title VII

5

> discrimination claim, the facts plead in the amended complaint still fail to "bridge [the] gap" between Mullenix's protected activities and the alleged adverse employment actions.

*Id.*

### D. The Instant Motion

On September 24, 2021, Plaintiff filed the instant Motion for Leave to file a Second Amended Complaint to reassert her previously dismissed retaliation claims under Title VII and the Equal Pay Act, contending that she has uncovered substantial evidence of retaliation during discovery. The University opposes the Motion, arguing that Plaintiff's reassertion of her retaliation claims in the Second Amended Complaint are futile under the Rule 12(b)(6) pleading standard.

## II.   Legal Standards

Federal Rule of Civil Procedure 15(a) permits a party to amend its pleading "once as a matter of course," but afterward "only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(1)-(2). "Whether leave to amend should be granted is entrusted to the sound discretion of the district court, and that court's ruling is reversible only for an abuse of discretion." *Quintanilla v. Texas Television Inc.*, 139 F.3d 494, 499 (5th Cir. 1998). "Leave to amend is in no way automatic, but the district court must possess a 'substantial reason' to deny a party's request for leave to amend." *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014). "In deciding whether to grant leave to amend, the district court may consider a variety of factors in exercising its discretion, including undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment." *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003).

Denying a motion to amend is not an abuse of discretion if allowing an amendment would be futile. An amendment is futile if it would fail to survive a Rule 12(b)(6) motion. *Marucci Sports*,

6

751 F.3d at 378. To survive a Rule 12(b)(6) motion, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Although the *McDonnell Douglas*[4] framework governs the standard of proof at trial, "a plaintiff need not make out a prima facie case of discrimination [or retaliation] in order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Raj v. Louisiana State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002) ("The prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement."). "A district court therefore errs by requiring a showing of each prong of the prima facie test for [retaliation] at the pleading stage." *Cicalese v. Univ. of Texas Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019). "Although plaintiffs do not have to submit evidence to establish a prima facie case of discrimination at this stage, they must plead sufficient facts on all of the *ultimate elements* of a [retaliation] claim to make their case plausible." *Id.* (cleaned up) (quoting *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016)). The Fifth Circuit also has explained that in this inquiry, "it can be helpful to reference the *McDonnell Douglas* framework, on which [a plaintiff] would continue to rely if he based his claim on circumstantial evidence . . . ." *Chhim*, 836 F.3d at 470; *see also Haskett v. T.S. Dudley Land Co.*, 648 F. App'x 492, 495 (5th Cir. 2016). (noting that elements of a prima facie case are helpful in framing what constitutes an ADEA claim).

### III.   Analysis

Again, to state a plausible retaliation claim under either Title VII or the Equal Pay Act, a plaintiff must demonstrate that: (1) she engaged in protected activity; (2) an adverse employment

---

[4] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

action occurred; and (3) a causal link exists between the protected activity and the adverse employment action. *Lindsley*, 984 F.3d at 469. The parties dispute whether Plaintiff plausibly alleges the ultimate element of causation. To do so, Plaintiff must plead facts permitting a reasonable inference that the University made adverse employment actions because of her complaints of unequal pay in 2010 and 2016. *Wright v. Union Pac. R.R. Co.*, 990 F.3d 428, 433 (5th Cir. 2021).

As discussed in detail above, the District Court dismissed Plaintiff's retaliation claims after determining that Plaintiff failed to allege sufficient facts to show a causal link between her protected activity in 2010 and 2016 and her adverse pay raises in 2018. Plaintiff now seeks to reassert her previously dismissed retaliation claims under Title VII and the Equal Pay Act, contending that "discovery has uncovered substantial evidence of retaliation prohibited by both statutes." Dkt. 127 at 1. Plaintiff's 116-page Second Amended Complaint, however, generally repeats in more detail the same allegations that the District Court found insufficient to show a causal connection between her protected activity and the alleged retaliation. In addition, Plaintiff relies on many of the same theories of causation the District Court has addressed and rejected. The Magistrate Court addresses each of these theories below.

### A.  Temporal Proximity and Chronology of Events

To demonstrate a causal connection between the protected activity and the adverse action, a plaintiff must demonstrate that the employer's decision "was based in part on knowledge of the employee's protected activity." *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 305 (5th Cir. 2020).

"Close timing between an employee's protected activity and an adverse action against him *may* provide the causal connection" required to make out a claim of retaliation. *Lyons*, 964 F.3d at 305. Courts that accept mere temporal proximity between an employer's knowledge of protected

activity and an adverse employment action as sufficient evidence of causality to establish a retaliation claim "uniformly hold that the temporal proximity must be 'very close.'" *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). The Fifth Circuit has found that a one-month period between the protected activity and the adverse action is sufficient to show a causal connection,[5] while a three- to five-month lapse is not close enough. *See Fisher v. Bilfinger Indus. Servs. Inc.*, No. 20-30265, 2021 WL 5272214, at *2 (5th Cir. Nov. 11, 2021) (three- to four-month gap insufficient); *Raggs v. Mississippi Power & Light Co.*, 278 F.3d 463, 472 (5th Cir. 2002) (five-month gap insufficient). "Moreover, plaintiffs 'cannot, with each protected activity, re-start the temporal-proximity clock' by alleging that an employer 'repeatedly engaged in protected activity' over a period of time." *Perkins v. Child Care Assocs.*, 751 F. App'x 469, 474 (5th Cir. 2018) (quoting *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 428 n.23 (5th Cir. 2017)).

In her Motion for Leave, Plaintiff re-urges her temporal proximity argument that the 20-month time period between her December 2016 Settlement Agreement and her August 2018 $1,500 pay raise shows a causal connection. Dkt. 127 at 4. The District Court has repeatedly rejected this argument, finding the 20-month time period insufficient to show a causal connection. Dkt. 18 at 3 (finding two-year time period insufficient to show causation); Dkt. 61 at 5 ("Because an approximately 20-month gap exists between Mullenix's protected activity and the alleged adverse compensation, the timing alone cannot permit a plausible inference of a causal connection."); Dkt. 90 at 3 (finding that "the timing is not close enough" to show a causal connection). "Action taken (as here) 20 months later suggests, by itself, no causality at all." *Breeden*, 532 U.S. at 274. Plaintiff also relies on the same list of alleged retaliatory actions and chronology of events to support her argument that she has demonstrated a causal connection. *Compare* Dkt. 127 at 5-6 *with*

---

[5] *See Campos v. Steves & Sons, Inc.*, 10 F.4th 515, 528 (5th Cir. 2021) (holding that "a month is close enough in time to create a causal connection").

Dkt. 16 at 11-13 *and* Dkt. 73 at 20-23. The District Court considered all of these allegations and found them insufficient to show causation. Dkt. 61 at 5-6; Dkt. 90 at 3-4.

Plaintiff fails to cure the deficiencies identified by the District Court in her Second Amended Complaint and re-urges many of the same arguments the Court has rejected. Accordingly, Plaintiff's Motion to Amend on these bases should be denied as futile and redundant. *See, e.g.*, *Angus v. Mayorkas*, No. 1:20-CV-00242-LY-SH, 2021 WL 4434932, at *3 (W.D. Tex. Sept. 24, 2021) (denying leave to amend as futile and redundant where plaintiff re-pled dismissed claims); *Gilmore v. Off. of Alcohol & Tobacco Control of the La. Dep't of Revenue*, No. CV 14-00434-JWD-EWD, 2016 WL 3675485, at *1 (M.D. La. July 7, 2016) (denying leave to amend previously dismissed claims as futile and causing needless delay); *Davis v. Vilsack*, No. CV 14-3320, 2015 WL 5012838, at *2 (W.D. La. Aug. 21, 2015) (denying leave to amend as futile where "the additional facts offered to support [plaintiff's] claim of racial discrimination are already in the record in his other filings"); *Oren-Bousquet v. LaSalle Bank, N.A.*, No. SA-07-CA-802-H, 2008 WL 11410042, at *1 (W.D. Tex. June 16, 2008) (denying leave to amend where plaintiff's "new allegations suffer from the same infirmity as her previous allegations").

Moreover, Plaintiff alleges that the University has retaliated against her in pay and treatment for "more than thirty years." Second Amended Complaint ¶ 421. "However, retaliation is, by definition, a discrete act, not a pattern of behavior." *Hamic v. Harris Cnty. W.C. & I.D. No. 36*, 184 F. App'x 442, 447 (5th Cir. 2006). In *Montgomery-Smith v. George*, 810 F. App'x 252 (5th Cir. 2020), the district court held that a four-month period between the filing of a discrimination charge in March 2015 and the adverse employment action in August 2015 was not in sufficient temporal proximity to establish a prima facie case of retaliation. *Id.* at 260. On appeal, the plaintiff argued that a statement a supervisor made in 2007 that she "would never advance after

having filed a lawsuit and a grievance involving him" created a fact issue as to causation. *Id.* The Fifth Circuit disagreed, finding that the plaintiff could not "use a statement made in 2007 to create a fact question as to whether a failure to promote her years later was retaliatory." *Id.* at 261. The Fifth Circuit further noted that in *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), "the Supreme Court drew a distinction between allegation of discrete acts, such as retaliation, and allegations of racial discrimination. Actions taken over a long period of time may ultimately, in the aggregate, constitute racial discrimination. That is not the case with a discrete act of retaliation." Thus, while the University's alleged actions over 30 years may constitute sex discrimination, they do not constitute discrete acts of retaliation.

### B.  "New" Theories of Causation

In her reply brief, Plaintiff contends that "in addition to temporal proximity and a chronology of events as detailed in Plaintiff's motion for leave, there are other ways to establish a facially plausible retaliation claim. And Plaintiff's amended complaint has done so." Dkt. 134. For example, Plaintiff argues that "allegations that a plaintiff's employment record do not support the adverse actions and an employer's departure from its own policies and procedures also establish facially plausible causation for retaliation claims." Dkt. 134 at 3. Plaintiff avers that the University has not consistently applied its policies for making salary and pay raises based on scholarship, teaching, and service to Plaintiff in comparison to her male counterparts. Plaintiff contends that, "although she has a comparable or better scholarship, teaching record, and service record than the male comparators, she is still paid tens of thousands of dollars less than them." Dkt. 127 at 7. While Plaintiff argues that the District Court has never addressed this theory of causation, Plaintiff has raised this argument three times before the District Court. *See* Dkt. 16 at 13; Dkt. 38 at 17; Dkt. 73 at 10-11. In fact, Plaintiff has simply copied word for word her previous argument from

her response to the University's motion for partial judgment on the pleadings.[6] Plaintiff has presented no new material facts to support her argument. Accordingly, Plaintiff continues to fail to "bridge the gap" between her protected activities and the alleged adverse actions.

Plaintiff also raises new theories of causation in her reply brief. Plaintiff contends that allegations that the stated reasons for the adverse actions are false and statements by colleagues and coworkers that conflict with the stated reasons can be evidence of retaliatory motive. Dkt. 134 at 3-5. Plaintiff also argues that causation in a retaliation claim is facially plausible if the employee alleges that a decisionmaker knew of the protected activity and expressed a negative attitude about it. *Id.* at 3-4. The Court does not consider arguments raised for the first time in a reply brief. *See Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010) ("Arguments raised for the first time in a reply brief are generally waived."); *Gillaspy v. Dallas Indep. Sch. Dist.*, 278 F. App'x 307, 315 (5th Cir. 2008) ("It is the practice of this court and the district courts to refuse to consider arguments raised for the first time in reply briefs."). Therefore, the Court need not address these newly asserted arguments. Regardless, Plaintiff has failed to allege any new material facts to demonstrate a causal connection between her protected activity and alleged adverse actions under any of her causation theories. Plaintiff has failed to allege a plausible retaliation claim under Rule 12(b)(6).

---

[6] With the exception of the record citations, omitted here, the following paragraph appears verbatim:

First, as alleged in the Amended Complaint, UT Law claims to make salary and raise decisions based on three factors: scholarship, teaching and service. However, as shown in exhaustive detail in the complaint, those factors have not been consistently applied to Professor Mullenix in comparison to her male comparators. These same alleged facts also show that Professor Mullenix's employment record do not support the adverse action of giving her lower raises and paying her less than comparable male professors. Specifically, they show that although she has a comparable or better scholarship, teaching record, and service record than the male comparators, she is still paid tens of thousands of dollars less than them.

Dkt. 73 at 11; Dkt. 127 at 7.

### C.  Repeated Failures and Undue Delay

Finally, the Court finds that Plaintiff's Motion to Amend also should be denied because of "undue delay" and "repeated failures to cure deficiencies by amendments previously allowed." *Marucci Sports*, 751 F.3d at 378. As noted, Plaintiff has had three opportunities to cure the deficiencies in her pleadings, but has not. *See U.S. ex rel. Spicer v. Westbrook*, 751 F.3d 354, 367 (5th Cir. 2014) (holding that it was not an abuse of discretion to deny leave to amend where the plaintiff "had the opportunity to cure and failed"); *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 567 (5th Cir. 2002) (explaining that, where the plaintiffs had "already filed an original complaint and two amended complaints, each alleging [similar] claims," they had been "given ample opportunity to plead their statutory claims," and therefore it was not an abuse of discretion to deny leave to amend further).

In addition, Plaintiff's lawsuit has been pending for almost two years, discovery is closed, motions for summary judgment by both parties are pending, and a jury trial is scheduled to commence in approximately three months. The Court finds that granting leave to amend at this late stage of the case would cause undue delay in its adjudication. *See Overseas Inns S.A. P.A. v. United States*, 911 F.2d 1146, 1151 (5th Cir. 1990) (upholding denial of leave to amend under Rule 15(a) where extensive proceedings had taken place, defendant had filed a motion for summary judgment, and plaintiff attempted to amend two-and-a-half years after filing its complaint and only after filing its own motion for summary judgment); *Earlie v. Jacobs*, 745 F.2d 342, 345 (5th Cir. 1984) (affirming denial of leave to amend where amendment would delay trial and prejudice non-movant).

## IV.   Conclusion

For the foregoing reasons, Plaintiff fails to allege sufficient facts in her Second Amended Complaint to allege a plausible retaliation claim under either Title VII or the Equal Pay Act. Accordingly, Plaintiff's Motion for Leave to File Second Amended Complaint that Reasserts Retaliation Claims under Title VII and the Equal Pay Act (Dkt. 127) is **DENIED**.

**SIGNED** on November 19, 2021.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE